208 EAST 30TH STREET CORP., Respondent, v TOWN OF NORTH SALEM, Appellant.

Second Department, August 2, 1982

APPEARANCES OF COUNSEL

*Arthur Kass* for appellant.

*Shamberg, Bender, Marwell & Cherneff, P. C. (Stuart R. Shamberg* of counsel; *Robert F. Davis* on the brief), for respondent.

OPINION OF THE COURT

WEINSTEIN, J.

On January 14, 1981, the Supreme Court, Westchester County (MARBACH, J.), rendered a judgment holding the zoning ordinance of the Town of North Salem to be "illegal, invalid and unconstitutional, on the ground that * * * [it] failed to meet [the town's] share of the regional housing needs and the needs of its own community" (see *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338; *Berenson v Town of New Castle,* 38 NY2d 102). The judgment directed the town to adopt a new zoning ordinance which would include one or more zoning classifications wherein multifamily residential housing was permitted as of right, and further provided that the court retained jurisdiction over the parties in order to insure that a new zoning ordinance, which satisfied the court's constitutional objections, would be enacted. The town, indeed, passed a set of zoning amendments designed to satisfy those objections. This appeal concerns certain procedural issues raised in connection with the enactment of the amendments to the ordinance.

The proposed amendments were to affect eight different sites at various locations within the town. There was no severability clause with respect to the individual sites. While the amendments were pending, recommendations were made by the Westchester County Planning Board, such as the inclusion of a requirement for smoke detectors in multiple dwellings and a requirement for a certain number of parking spaces for multiple dwellings, hotels and motels. These recommendations ultimately were not adopted by the town board. Section 239-m of the General Municipal Law provides that a town board must not act contrary to the recommendations of a county planning board, except by a vote of a majority plus one.

Protests against the proposed amendments were registered by certain property owners whose property would be affected by, or was near property that would be affected by, the proposed amendments. Pursuant to section 265 of the Town Law, if there are protests registered against a zoning change by the owners of at least 20% of the land either "included in such proposed change, or * * * immediately adjacent extending one hundred feet therefrom or * * * directly opposite thereto, extending one hundred feet, from the street frontage of such opposite land", the change can become effective only upon approval by three fourths of the members of the town board. In this case, the owners of 20% of the total land affected by, or adjacent to or opposite land affected by, the amendments as a whole did not register protests. However, the owners of about 35% of the relevant land in the Salem Center site, one of the eight individual sites affected by the proposed amendments, as well as the owners of less than 20% of the relevant land in the Peach Lake site, did register protests.

The town board voted on the amendments, as a unified set and not by individual site, on December 8, 1981. The vote was 3 to 2 in favor, clearly neither a three-fourths vote, as would be required if the provisions of section 265 of the Town Law were deemed operative, nor a majority plus one, as would be required pursuant to section 239-m of the General Municipal Law. Accordingly, the town refused to publish the amendments, thereby precluding their taking effect.

Plaintiff, which owned property whose status would be affected by the zoning amendments, thereupon moved at Special Term for an order directing the town to publish the amendments. Plaintiff noted before Special Term that a new town board had been elected in North Salem on a platform promising no changes in zoning, and that there was not a "prayer in hell" that a new ordinance could be passed by a 4 to 1 vote. Plaintiff apparently did not give the protesting landowners notice of this motion. However an attorney representing the protesters in Salem Center was allowed to appear at oral argument before Special Term.

Special Term held that insofar as the amended ordinance affected property in the Salem Center location, it had not

been properly enacted. However, it stated that "[a]s to the remaining areas, since no valid protests from 20 percent of the landowners of any other location were submitted, the vote of the Town Board was sufficient to adopt the remainder of the amendment to the ordinance." The court held that the amended ordinance, even without the provisions relating to Salem Center, satisfied the constitutional objections which had been set forth in the earlier judgment.

The town has appealed from the resulting order and judgment. It is, we might note, a rather unusual situation: an appeal by a town from a judgment which held its own zoning ordinance to be valid!

The town raises, essentially, three arguments on appeal. The first goes to the jurisdiction of the court to adjudicate the instant matter. The town argues that certain necessary parties, in particular, the owners of the land that was to be affected by the zoning amendments, should have been, but were not, made parties to this matter (see CPLR 1001, subd [a]; 3211, subd [a], par 10).

The merits of this argument turn upon the nature of this lawsuit. If the lawsuit is in the nature of an action for a declaratory judgment, seeking a declaration that the zoning amendments were validly enacted, it would appear that the protesting landowners indeed were necessary parties, for they "might be inequitably affected by a judgment in the action" (see CPLR 1001, subd [a]; see, also, *Brechner v Incorporated Vil. of Lake Success,* 23 Misc 2d 159; cf. *Challette, Inc. v Town of Brookhaven,* 43 Misc 2d 264, for a contrary rule in an instance where, as here, plaintiff is itself an affected property owner). Those landowners who did not protest even after the proposed amendments were made public indicated, by their silence, that they would not be "inequitably affected by a judgment in the action", but the same could not be said with respect to those landowners who filed protests. If such were the case, the fact that the protesting landowners in Salem Center were allowed to intervene would not be sufficient to satisfy the statute, because protesting landowners in the Peach Lake site were not afforded the opportunity to be heard.

■ We hold, however, that this is not a declaratory judgment action. The relief actually sought, notwithstand-

ing the language in the moving papers, was in the nature of mandamus, to wit, an order directing the Town of North Salem "to perform a duty enjoined upon it by law" (see CPLR 7803, subd 1), specifically, to publish the zoning amendments. Accordingly, the nature of this matter is a proceeding pursuant to CPLR article 78, and, therefore, "the officer whose conduct is to be controlled is the only necessary party respondent" (24 Carmody-Wait 2d, NY Prac, § 145:265, p 65; see, also, *Matter of Zimmerman v Kramer,* 29 Misc 2d 413; *Matter of Leventhal v Michaelis,* 29 Misc 2d 831). To be sure, the court *may* direct that notice of the proceeding be given to other persons, or allow other interested persons to intervene (CPLR 7802, subd [d]), but the statute makes this discretionary with the court. Essentially, a proceeding under article 78 is a proceeding against a body or officer *only.* Since the Town of North Salem was properly made a party to this suit, the court had jurisdiction to reach the merits.

The second issue raised by the town, and the first going to the merits, concerns section 239-m of the General Municipal Law. That section, referred to earlier, provides that when a town board decides to act contrary to the recommendations of a county planning board, as the Town Board of North Salem did here, it must do so by a vote of a majority plus one. The zoning amendments herein were, as stated earlier, approved by a vote of only 3 to 2. However, section 277.61 of the Westchester County Administrative Code, in contrast to the General Municipal Law, provides that a town board may act contrary to the recommendation of the county planning board by a simple majority vote, as long as the action is accompanied by a resolution of the board (a requirement also contained in the General Municipal Law). The mandate of the County Administrative Code was fulfilled here.

The General Municipal Law and the Westchester County Administrative Code are thus in conflict on this point. A similar conflict between the same two sections of the same two statutes confronted this court in *Bloom v Town Bd. of Town of Yorktown* (80 AD2d 823). In that case, we noted that section 239-m of the General Municipal Law was originally enacted in 1960 (L 1960, ch 1041, § 1) as a

general law, whereas former section 451 of the Westchester County Administrative Code, predecessor of the current section 277.61, was originally enacted in 1961 (L 1961, ch 822, § 1) as a special law, as defined in subdivision 12 of section 2 of the Municipal Home Rule Law. "A special statute which is in conflict with a general act covering the same subject matter controls the case and repeals the general statute insofar as the special act applies" (McKinney's Cons Laws of NY, Book 1, Statutes, § 397; see *Board of Coop. Educational Servs., Nassau County v Goldin,* 38 AD2d 267), at least where no contrary intention is clearly indicated (see *Matter of We're Assoc. Co. v Bear,* 35 AD2d 846, affd 28 NY2d 981). Thus, in *Bloom v Town Bd. of Town of Yorktown* (*supra*), we held that the Westchester County Administrative Code was controlling and the same result follows here as well (see *Matter of Town of Smithtown v Howell,* 31 NY2d 365). Accordingly, the argument based on the General Municipal Law fails.

The town's final argument is, in our view, the most weighty. This argument concerns section 265 of the Town Law. The amendments herein were not approved by a three-fourths vote of the town board, as required by the provisions of that section (see *Rabasco v Town of Greenburgh,* 285 App Div 895). But the method of specifying *which* 20% of the relevant land, the owners of which must register protests in order for those provisions to become applicable, is uncertain. If it is 20% of all the land affected by the amendments whose owners must protest, then the statute is not applicable at all, since concededly the per cent of protesters was less than 20%. If, as Special Term concluded, the discrete sites affected by the amendments should be viewed individually, despite the absence of a severability clause, then the statute applies to Salem Center only. The town argues that, since the set of amendments were part of one comprehensive scheme and contained no severability clause, protests registered by the owners of 20% of the land in only one site are sufficient to render the entire set of amendments subject to approval by no less than a three-fourths vote.

■ We agree with Special Term. The case of *431 Fifth Ave. Corp. v City of New York* (270 App Div 241, affd 296

NY 588) involved former section 200 of the New York City Charter. That section, which is quite similar to section 265 of the Town Law, provided that any zoning regulation in the City of New York against which protests are filed by the owners of 20% of the affected or adjacent land shall not become effective unless approved by a unanimous vote of the board of estimate. In that case, the owners of 20% of the land in one zoning district affected by a zoning change registered protests, although the owners of 20% of all the land affected by the change did not. The court was confronted with the same issue as now confronts this court; it held that, with respect to the different districts affected by the amendment, "insofar as the right to protest is concerned, these separate sections should be considered as if they had been separately enacted" (*431 Fifth Ave. Corp. v City of New York,* 270 App Div 241, 248, *supra*). It follows that in the case at bar, the zoning amendments, adopted by a 3 to 2 vote by the Town Board of North Salem and affecting eight discrete sites within the town, should be considered as if they had been separately enacted. With respect to the Salem Center site, where the owners of 20% of the affected, adjacent or opposite land registered protests, the zoning amendment cannot be deemed to have been validly enacted. However, with respect to the other seven sites, the owners of 20% of the affected, adjacent or opposite land did not register protests. Accordingly, the amendments relating to those seven sites were validly enacted, and the town is required to publish them.

A further point must be made. In the case at bar, the boundaries of the various "sections" which are affected by the zoning amendments are not geographically contiguous and can be considered separately. In *431 Fifth Ave. Corp. v City of New York* (*supra*), the sections were different zoning districts. There is no one rule as to how to delineate the boundaries of the respective sections with respect to which a multisection zoning change must be deemed separately enacted. But the boundaries between sections must be reflected in the original or amended zoning ordinance itself. This point can be gleaned from *Morrill Realty Corp. v Rayon Holding Corp.* (254 NY 268). That case, in which a predecessor to former section 200 of the New York City

Charter was controlling, involved a zoning amendment affecting some 60 city blocks in Manhattan, and passed by a less than unanimous vote. Less than 20% of the owners of the affected or adjacent land registered protests. However, the owners of all the land fronting the east side of Madison Avenue between 36th and 37th Streets did protest, and they urged that either the amendment be deemed invalid *in toto,* or else that the amendment be regarded as a composite of many separate propositions separately adopted, so that it would at least be deemed invalid as to them. The Court of Appeals rejected that argument, and held the amendment entirely valid. We note, however, that in *Morrill Realty Corp. (supra),* nothing in the original or amended ordinance itself indicated that any special status be conferred upon any particular block. In the case at bar, where eight noncontiguous sites are affected by the amendments, special consideration is particularly appropriate for each site.

The two suggested alternative applications of the statute set forth above are not appropriate. Where, as here, there are separable provisions of a single zoning change, it would not be proper to require the owners of 20% of all the land affected by the amendments to protest in order to trigger the operation of section 265 of the Town Law. Such a holding would enable a municipal agency to insure passage of a highly objectionable zoning amendment by simply combining it with another large, unobjectionable amendment. A statute must not be construed in a manner that would permit its purpose to be defeated.

Even more untenable is the construction of the statute suggested by the town. The town argues that since the amendments were part of a single comprehensive scheme, the protests filed by the owners of 20% of the affected, adjacent or opposite land in Salem Center should render the entire set of amendments invalid in light of its failure to be approved by a three-fourths vote. But the town cannot have it both ways. Either the Salem Center amendments were severable from the other amendments, in which case all of the remaining amendments were validly enacted, or the Salem Center amendments were not severable from the other amendments, in which case the entire set of

amendments was validly enacted due to the failure of the owners of 20% of all the affected, adjacent or opposite land to protest. In either event, it is clear that the amendments relating to the seven sites other than Salem Center were validly enacted by a vote of 3 to 2.

For the reasons stated above, the order and judgment of Special Term should be affirmed insofar as appealed from, and the Town of North Salem directed to publish all the zoning amendments, except those affecting Salem Center.

MOLLEN, P. J., TITONE and RUBIN, JJ., concur.

Order and judgment (one paper) of the Supreme Court, Westchester County, dated January 7, 1982, affirmed insofar as appealed from, without costs or disbursements. The Town Clerk of the Town of North Salem shall publish the zoning ordinance pursuant to the order and judgment appealed from within 10 days after service upon him of a copy of the order to be made hereon, with notice of entry.