OPINION OF THE COURT
James A. Gowan, J.
Plaintiff, Gerald H. Grayson, has commenced this declaratory judgment action, seeking a declaration that defendants, Town of Huntington (Town) and John O’Neil, Richard Hanse, Sandra Triolo, James Gaughran and Daniel Martin, constituting the Town Board of the Town of Huntington (Town Board), *1066 may not alienate a piece of real property, owned by the Town (described on the Suffolk County land and tax map as section 270, block 2, lot 5), to defendant, Huntington Housing Authority, for use and development as low-income housing. The plaintiff bases his claim for relief upon the premise that the property in issue is "parkland” which cannot be alienated by the Town without the approval of the New York State Legislature.
The plaintiff also seeks to enjoin the defendants from diverting the property to any use other than parkland without the express authority of the State Legislature.
Now before this court is a motion by the defendant, Huntington Housing Authority (Housing Authority), Royal Thompson, as Chairman of the Housing Authority, and Edith Embler, Executive Director of the Housing Authority, seeking summary judgment pursuant to CPLR 3212, dismissing the complaint. The grounds are that pursuant to Public Housing Law § 124, the Town possessed the authority to convey the subject property to the Housing Authority, even if it was parkland. Alternatively, it is urged that the property was not "parkland”, despite its being referred to as such.
The Town and the Town Board have also joined in this motion.
The plaintiff opposes the defendants’ motion and, at the same time, cross-moves pursuant to CPLR 3025 (b), fot leave to amend his complaint in order to add the following causes of action: (1) the proposed housing project is violative of Public Housing Law § 150; (2) the resolution passed by the Town Board violated Town Law §§ 64 and 90; and (3) the Town Board’s passage of the resolution approving the Housing Authority’s application for rezoning of the property from an R-40 zoning district to an R-3M zoning district was arbitrary and constituted impermissible "spot zoning.”
FACTUAL AND PROCEDURAL BACKGROUND
The Town of Huntington has held title to the property since its acquisition in 1699. Over the years, the property remained in an undeveloped state and appears to have been designated as parkland by at least one Town department, to wit: the assessor. In 1985, the Housing Authority obtained approval from the United States Department of Housing and Urban Development (HUD) for the funding of public housing. After considering various locations, the Housing Authority recom *1067 mended to the Town Board that the property which is the subject of this lawsuit would be the best site for the construction of a 50-unit low-income housing project. In May of 1985, the Housing Authority filed an application with the Town, seeking a change of zone from its classification as one-acre residential (R-40) to garden apartment use (R-3M). This matter was referred to the Town Planning Board, which recommended a public hearing on the proposed rezoning.
While approval of the rezoning application was pending, the Town Attorney’s Office made inquiry of the New York State Comptroller’s Office as to whether the approval of the New York State Legislature was necessary to commit the property to a use other than parkland. By letter dated June 3, 1986, associate counsel for the State Comptroller notified the Town that no opinion could be expressed by his office regarding whether the property had been dedicated to park purposes and, therefore, left unanswered the question of whether State legislative approval was necessary in order to terminate its status as parkland.
In the meanwhile, processing of the rezoning application continued. By resolution dated December 22, 1987, the Town Board changed the zoning classification from R-40 to R-3M and declared that it was the intent of the Town Board to convey the property to a "turnkey” developer (as defined by HUD regulations) for development and ultimate conveyance to the Housing Authority.
Thereafter, an action was commenced pursuant to CPLR article 78 to annul the resolution of the Town Board. In addition, the plaintiff commenced the instant action seeking a judgment declaring the property affected by the resolution to be parkland, which could not be reclassified for other purposes without the approval of the State Legislature.
In the CPLR article 78 proceeding, this court (Gowan, J.), in a decision dated July 1, 1988, annulled the determination of the Town Board and remitted the proceeding for further analysis of the long-term demographic effects of the proposed zoning reclassification on the population pattern and community character, as required by the Environmental Conservation Law.
In light of the aforementioned determination, the court declined to address the contentions raised in the declaratory judgment action.
The judgment subsequently entered in accordance with the *1068 above decision was appealed to the Appellate Division, Second Department, who determined that the Town had adequately considered the impact of the project upon the population patterns and community character of the surrounding area. The Appellate Division remitted the declaratory judgment action to this court for a decision on the motions presented by the parties. (See, Matter of Strathmore Hills Civic Assn. v Town of Huntington, 146 AD2d 783.)
LAW AND ANALYSIS
Initially, the defendants contend that the reclassification of the property from parkland to another use did not require the approval of the State Legislature. In support of this premise, the defendants rely upon Public Housing Law § 124, which states:
"124. Grant or lease of property by a government to or for an authority.
"In connection with projects located within its territorial boundaries, a government may, notwithstanding any other provisions of law, upon such terms, with or without consideration, as it may deem advisable, grant, convey or lease any of its property, whether held in a proprietary or governmental capacity, to an authority or government, including real property already devoted to a public use, provided that the government making the grant or lease determines that the premises are no longer required for the public use to which the property is devoted and that it is to the interest of the government to grant or lease the property to the authority for the purposes of this chapter. Notwithstanding any general, special or local law and any limitation or prohibition which may be contained therein against the power of alienation, any grant, sale, conveyance or lease may be made by a government to an authority or government in connection with a project, without appraisal, public notice, advertisement or public bidding. The finding of the government having jurisdiction that the property is no longer required for the public purpose for which it is devoted and that it is to the best interest of the government involved to grant or lease the property, shall be conclusive.”
In opposition, the plaintiff argues that Public Housing Law § 124 is inapplicable to the circumstances at issue herein because: (1) parklands are excluded from the ambit of the statute; (2) conveyance of the property was not made directly to the Housing Authority, but rather to a "turnkey” devel *1069 oper; and (3) the character of the property is not that to which the statute is directed.
Grayson’s urging that Public Housing Law § 124 is inapposite to this action is without merit. Public Housing Law § 124, by its own terms, applies to the transfer of "any” governmental property, so long as the requirements of the statute have been satisfied. Assuming, without determining, that the property is parkland, courts are not required to give a statute a narrow meaning which defeats the general purpose and manifest policy intended to be promoted (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 96; 56 NY Jur, Statutes, § 223). Generally, words are to be given their usual and commonly understood meaning (see, e.g., We’re Assocs. Co. v Cohen, Stracher & Bloom, 65 NY2d 148, 151). Guided by these tenets of statutory construction, and mindful that the alienation of dedicated park areas in New York, for other than park purposes, requires the approval of the State Legislature (see, Matter of Ackerman v Steisel, 104 AD2d 940, affd 66 NY2d 833; Williams v Gallatin, 229 NY 248, 253; Matter of Douglaston & Little Neck Coalition v Sexton, 145 AD2d 480), this court concludes that the alienation of the subject property for use as low-income housing was lawful pursuant to Public Housing Law § 124, notwithstanding the lack of such approval.
The plaintiff further contends that the conveyance of the property to a "turnkey” developer renders Public Housing Law § 124 inapplicable, thereby necessitating State legislative approval of the use of the property for a purpose other than parkland.
In accordance with the "turnkey” method of development (see generally, 24 CFR 941.102 [b]; Matter of Marino v Town of Ramapo, 68 Misc 2d 44 [Sup Ct, Rockland County 1971]), the property will be conveyed by the Town Board of the Town of Huntington to a private developer who will construct 50 units of public housing thereon. Upon approval of the site, design and cost estimate, the Housing Authority will execute a contract of sale with the developer to purchase the completed project.
Generally, statutes in derogation of the common law must be strictly construed (see, e.g., Goncalves v Regent Intl. Hotels, 58 NY2d 206; Bingham v Ryder Truck Rental, 110 AD2d 867). Thus, it would appear that Public Housing Law § 124, standing alone, would be inapplicable to the conveyance at bar *1070 which is not being made directly from the Town Board to the Housing Authority.
However, Public Housing Law § 220 states:
"220. Construction.
"This chapter shall be construed liberally to effectuate the purposes hereof, and the enumeration of specific powers in this chapter shall not operate to restrict the meaning of any general grant of power contained in this chapter or to exclude other powers comprehended in such general grant. In construing this chapter consideration shall be given to its purpose and intent, among others, to empower an authority to do any and all things necessary to secure the financial aid of the United States Housing Authority and the state of New York, or any department, agency or instrumentality of the federal or state government, in the undertaking, planning, construction, maintenance and operation of any project.”
This statutory provision would seem to abrogate the common-law rule, thereby making Public Housing Law § 124 applicable to the conveyance at issue herein. Consequently, the Town may lawfully convey the property for use and development as low-income housing notwithstanding resolution of the issue of whether it is parkland.
By way of cross motion, the plaintiff seeks leave, pursuant to CPLR 3025 (b), to, inter alia, amend the complaint to add causes of action alleging: (1) the defendants’ violation of Public Housing Law § 150 and Town Law §§ 64 and 90; and (2) that the Town illegally "spot zoned” the subject property.
As a rule, a motion to amend a pleading shall be freely given absent a showing of prejudice or surprise to the opposing party (see, CPLR 3025 [b]; Fahey v County of Ontario, 44 NY2d 934). Upon consideration of a motion for leave to amend, courts should not examine the merits or legal sufficiency of the proposed amendment, unless it is "clearly and patently insufficient on its face” (De Forte v Allstate Ins. Co., 66 AD2d 1028; see also, Fisher v Carter Indus., 127 AD2d 817), or, at the very minimum, unless "a substantial question is raised as to the sufficiency or meritoriousness of [the] proposed pleading” (Sharapata v Town of Islip, 82 AD2d 350, 362, affd 56 NY2d 332; see also, Hopper v Hise, 131 AD2d 814).
The plaintiff seeks to assert a cause of action alleging that the Town did not subject its resolution of intent to convey the property to a "turnkey” developer to a permissive referendum in violation of Town Law § 64 (2) and § 90. These sections of *1071 the Town Law would appear to be in conflict with Public Housing Law § 124, which in relevant part, provides that such a conveyance is lawful, "notwithstanding any other provisions of law * * * without appraisal, public notice, advertisement or public bidding.”
It is well settled that a special statute (such as Public Housing Law § 124), which is in conflict with a general act covering the same subject matter, controls the case and repeals the general statute insofar as the special act applies, so long as no contrary intention is clearly indicated (see, 208 E. 30th St. Corp. v Town of N. Salem, 88 AD2d 281, 286; Bloom v Town Bd., 80 AD2d 823, 824, appeal dismissed 53 NY2d 938; McKinney’s Cons Laws of NY, Book 1, Statutes § 397).
Accordingly, the plaintiffs argument based upon Town Law § 64 (2) and § 90 is without merit.
The plaintiff further urges that leave to amend the complaint should be granted to permit the addition of a cause of action alleging the violation of Public Housing Law § 150. The plaintiff contends that the aforestated statutory provision has been violated by virtue of the Town Board’s approval of the housing project in contravention of the Town’s master plan.
As previously noted, the Town Board’s approval of the housing project coincided with a change in the zoning classification from one-acre residential to garden apartment use.
In Asian Ams. For Equality v Koch (72 NY2d 121, 131), the Court of Appeals delineated the following parameters with respect to the review of zoning legislation: "A well-considered plan need not be contained in a single document; indeed, it need not be written at all. The court may satisfy itself that the municipality has a well-considered plan and that authorities are acting in the public interest to further it by examining all available and relevant evidence of the municipality’s land use policies (Udell v Haas, [21 NY2d,] supra, at 470-472). Zoning legislation is tested not by whether it defines a well-considered plan but by whether it accords with a well-considered plan for the development of the community. When a zoning ordinance is amended, the court decides whether it accords with a well-considered plan in much the same way, by determining whether the original plan required amendment because of the community’s change and growth and whether the amendment is calculated to benefit the community as a whole as opposed to benefiting individuals or a group of individuals (see, Randolph v Town of Brookhaven, 37 NY2d *1072 544, 547; Matter of Town of Bedford v Village of Mount Kisco, 33 NY2d 178, 187-188, rearg denied 34 NY2d 688).”
Based upon the foregoing, the court concludes that the amendment of the zoning classification and approval of housing project were not violative of Public Housing Law § 150. The formal amendment of a master plan need not precede its adaptation to current conditions and planning considerations (see, Matter of Town of Bedford v Village of Mount Kisco, 33 NY2d, supra, at 188).
Finally, the plaintiff seeks leave to amend the complaint to add a cause of action against the Town and the Town Board alleging the illegal "spot zoning” of the property.
A party seeking to challenge a zoning enactment as contrary to a comprehensive plan assumes a heavy burden to counter the strong presumption of validity accorded the enactment (see, Taylor v Incorporated Vil. of Head of Harbor, 104 AD2d 642, 645, lv denied 64 NY2d 609). A review of the plaintiff’s proposed amendment to the complaint evinces that it is insufficient to overcome this presumption of validity. Moreover, a change in zoning adopted by a Town to accommodate a Federally financed low-income housing project does not constitute spot zoning (see, Matter of Marino v Town of Ramapo, 68 Misc 2d 44 [Sup Ct, Rockland County 1971], supra; Anderson, New York Zoning Law and Practice § 11.06 [3d ed]).
CONCLUSION
Based upon the foregoing, the motion for summary judgment dismissing the complaint as against all the defendants is granted. The cross motion for leave to amend the complaint is denied in all respects.