*564 OPINION OF THE COURT
George L. Jurow, J.
I.
Presently before the court are objections filed by the Commissioner of Social Services (Commissioner) to one portion of orders entered by a variety of Hearing Examiners sitting in New York County which vacated or modified an income execution order (IEO) previously issued by the Support Collections Unit of the Department of Social Services (SCU) pursuant to CPLR 5241.
Because the 76 objections were based upon and appear to raise similar, if not identical legal issues, the 76 cases were consolidated for purposes of this court’s review and decision.
The court is being asked, by the Commissioner of Social Services, for a ruling interpreting CPLR 5241 in such a manner that would limit or divest the Family Court of jurisdiction over certain child support income executions, a key mechanism embodied in New York’s landmark legislation strengthening procedures for the enforcement of child support. (New York State Support Enforcement Act of 1985 [L 1985, ch 809, as amended].) This proceeding is therefore of unusual interest to the court, on a judicial as well as administrative level: As revealed by these cases, there exists an underlying and perhaps escalating conflict between the linchpins of the statutory child support enforcement process, namely, the Commissioner’s Support Collection Units and the court’s Hearing Examiners. For the Child Support Enforcement Act to achieve optimum success in strengthening procedures for enforcing child support obligations, this conflict needs to be resolved.
The common underlying pattern with respect to these cases is as follows: The cases were initiated by respondent’s supplemental petition to vacate or modify a prior order of support; to vacate or modify any outstanding arrears; to refund any overpayments; and to vacate or modify outstanding IEOs. In each case, following a hearing, the Hearing Examiner granted the elements of relief requested, including but not limited to vacating or modifying any outstanding IEOs then in existence. In all of the cases, the only objection raised by the Commissioner was with respect to the Hearing Examiner’s action vacating (or in a few instances modifying) the IEO. Although the hearings involved a variety of fact patterns underlying the supplemental petitions, common clusters of factual predicates emerged before the Hearing Examiners, for example, sitúa *565 tions in which the public assistance case had previously been closed; situations in which children had become emancipated; errors in the computation of arrears, and the like.
Interestingly, and of some significance to the court’s conclusions in disposing of these objections (as explained below), was the typical' sequence of these hearings, as revealed in the transcripts: After taking testimony (primarily from the respondent), the Hearing Examiners would vacate or modify the underlying order, and similarly deal with issues of arrears, and so forth. At the close of the hearings, the Hearing Examiners, as their concluding act (sometimes after the respondents complained of having money being withheld from their paychecks but sometimes sua sponte) would, often in ritualistic fashion, and often without further discussion or explanation, vacate or modify the outstanding IEO. Counsel for the Commissioner would then object, usually pro forma, to the action taken with respect to the IEO (even in situations in which the Commissioner did not dispute the fact that the Commissioner owed moneys to the respondent), and the hearing would conclude.
Petitioner’s "Memorandum of Law in Support of Commissioner’s Objection(s)” argues that the Family Court is without jurisdiction to review the propriety of what should be administrative determinations:
"Section 5241 of the CPLR authorizes the support collection unit to issue income executions, provides that debtors receive notice, and mandates administrative review by the agency when it is asserted that a mistake has been made.
"It is DSS’s position that the legislature has mandated that litigation regarding income executions is cognizable in the first instance before the agency and, upon an adverse determination review is available via Article 78. If the Family Court determined it had jurisdiction as a reviewing court, that review would still be improper because the respondents have failed to exhaust their administrative remedy.”
Curiously, the Commissioner’s initial memorandum, arguing that the Family Court (Hearing Examiners) was without power to deal with IEOs, was completely silent as to exactly what the respondents should have done to address their problems with respect to the outstanding IEOs. However, in a "Supplemental Brief’ filed with the court the Commissioner elaborated on that rather critical point: "DSS has adequate procedures to protect respondents’ rights. Pursuant to CPLR *566 5241 and 18 NYCRR § 347.9 they are sent notice of the impending income execution and informed that they have fifteen days to contest the garnishment. The respondent may elect to conference by telephone or submit evidence by mail or in person. SCU has forty-five days to notify the respondent of its decision from the date the income execution was served. SCU also has procedures for amending the income execution and refunding money to respondents where circumstances have changed since the income execution.” (Emphasis added.) Appended to the "Supplemental Brief’ were a variety of DSS forms and what may be termed departmental "internal procedural memoranda”.
II.
CPLR 5241 reads in part:
"(a) (8) 'Mistake of fact’ means an error in the amount of current support or arrears or in the identity of the debtor or that the order of support does not exist or has been vacated * * *
"(e) Determination of mistake of fact. Where the execution has been issued by the support collection unit, the debtor may assert a mistake of fact and shall have an opportunity to make a submission in support of the objection within fifteen days from service of a copy thereof. Thereafter, the agency shall determine the merits of the objection, and shall notify the debtor of its determination within forty-five days after notice to the debtor as provided in subdivision (d) of this section” (emphasis added).
In addition, CPLR 5241 (b) reads in part that "The creditor may amend the execution before or after service upon the employer or income payor to reflect additional arrears or payments made by the debtor after notice pursuant to subdivision (d) of this section, or to conform the execution to the facts found upon a determination made pursuant to subdivision (e) of this section.”
It is clear from the language of CPLR 5241 that — at least with respect to the initial issuance or implementation of SCU income executions — objections related to their issuance are to be dealt with by the agency, and that any further appeals following a final determination by the agency (Department of Social Services), that is, after exhaustion of administrative remedies pursuant to 18 NYCRR 347.9, would lie in a CPLR article 78 proceeding. In other words, the clear intent of the *567 Legislature in passing CPLR 5241 in 1985 (and as since amended), consistent with prior Federal child support legislation, was to set up an administrative mechanism to handle the issuance of income executions without requiring further court action. It is also clear that, by limiting such objections to carefully defined "mistakes of fact”, the 1985 legislation served the laudable objective of, also consistent with Federal requirements, strengthening income executions as a support enforcement method. (See, Governor’s approval mem, 1985 NY Legis Ann, at 287.)
The Commissioner’s arguments that this court lacks subject matter jurisdiction concerning matters falling within CPLR 5241 (specifically, CPLR 5241 [e]) are highly persuasive provided that the objections before the court properly relate to items governed by that provision. The Commissioner’s memoranda appear to implicitly if not explicitly assume that these cases do fall within the purview of CPLR 5241. However, this assumption requires further analysis:
A very careful reading of the transcripts, as well as some logical thought, suggest to this court that these cases may well not be governed at all by the CPLR 5241 (e) "mistake of fact” framework. It is important to note that almost all the objections before the court relate to supplemental petitions filed long after, in some cases years after, the IEO has gone into effect. It would appear that the CPLR 5241 (e) mechanism is designed to deal with objections related to the initial issuance or implementation of the IEO. A literal reading of CPLR 5241 (e), which requires action by the respondent within 15 days after service of a copy of the IEO, would bar its remedy with respect to these subject cases: Since these IEOs have long since been served (hopefully, with the requisite notice), any argument suggesting that the respondents invoke the CPLR 5241 (e) process before the agency would appear, on its face, to be futile as time barred. Such a conclusion suggests that the Commissioner’s argument may be in error insofar as it suggests that we are dealing at all with the CPLR 5241 (e) process.
The court’s view that CPLR 5241 (e) may not be applicable at all is reinforced by a conceptual analysis of what these cases are really about. If respondents’ objections to the IEOs related to conditions or circumstances at or about the time of SCU’s initial decision to issue an IEO, that might properly be governed by the CPLR 5241 (e) mechanism. In contrast, what respondents have demonstrated in most of these cases is that *568 changed circumstances subsequent to the initial implementation of the IEO, and in most cases long after the orders have been in effect, negate the need for any continuing IEO at all, or at least one in its original form. In these situations, any attempt to consider them within a "mistake of fact” framework is to try to fit a square peg into a round hole. For example, if an original support order, upon which an IEO in existence was premised, is subsequently vacated, and there are no arrears (and in some cases, moneys actually owing to the respondent), then there is no further predicate for the continued existence of the IEO. That does not mean that the respondent should now turn to the Commissioner’s SCU on the theory of a "mistake of fact” claim in order to get his IEO vacated (as the Commissioner’s memorandum would seem to imply). It would be odd, to say the least, to contend that the actions of the Hearing Examiner, in addressing the underlying order (and perhaps arrears as well), have the effect of "creating” an immediate "mistake of fact” in terms of the continued existence of the IEO. Rather, there is simply no further basis for the IEO at all, or in its current form. Therefore, what exists is a need for what might be, in these contexts, termed ministerial actions to deal with the outstanding IEOs.
The question, then, is who should address the vacatur or modification of the IEO, that is, take the ministerial action: The Hearing Examiner or the Commissioner (SCU)?
Viewed in this light, the real issue raised by the Commissioner’s objections lies more in the realm of pragmatic administrative procedure than in competing tests of the ultimate jurisdictional power between the Commissioner and the Hearing Examiners. In other words, to (erroneously) conceptualize the issues underlying these objections as related to CPLR 5241 and the exhaustion of administrative remedies pursuant to 18 NYCRR 347.9, as did the Commissioner, would require the court to consider whether any countervailing jurisdictional authority lay within the Family Court, perhaps either through the Family Court’s continuing jurisdiction over its own orders (see, Family Ct Act § 451) or CPLR 5240 (a broad grant of judicial power to modify the various CPLR enforcement procedures). But this court need not and should not address such larger concerns. Once the underlying issue in these cases, with respect to the continued existence of the IEOs is properly *569 defined, what we are dealing with is a need for a largely administrative remedy, primarily ministerial in nature, that relates to the outstanding IEO.
Given that the cases before the court do not clearly lie within the CPLR 5241 (e) "mistake of fact” process, and given that CPLR 5241 does not otherwise address the actual issue before the court,[1] the court must decide whether it was proper for the Hearing Examiners to have acted with respect to the outstanding IEOs or whether, alternatively, the Commissioner, through its SCU, was the proper entity to have done so. This court, for the following reasons, concludes that the Hearing Examiners should have referred any further action with respect to the IEOs to the Commissioner:
First, where an administrative mechanism already exists for dealing with the over-all subject matter in question, namely, SCU with respect to IEOs, that administrative mechanism is the logical repository for handling matters ancillary to their primary grant of jurisdiction. Thus, given that CPLR 5241 allocates the primary responsibility of issuing the IEOs in the first place, and in resolving disputes arising from the initial issuance of the IEOs, to the SCU, supplementary tasks also related to the IEO subject matter should be handled by the SCU as well, as a matter of administrative logic, particularly when there is no specific grant of statutory or regulatory authority lying elsewhere.
Second, because the actions complained of are largely ministerial in nature, they are more appropriately handled by an administrative rather than judicial mechanism.
Third, an argument that the judicial mechanism is the more appropriate repository of authority for the types of acts required in these cases before the court would require this court to find an express grant of underlying authority. (See, Matter of Borkowski v Borkowski, 38 AD2d 752 [2d Dept 1972]; cf, Matter of Commissioner of Social Servs. v Reillo, May 8, 1987, Zuckerman, J. [unpublished decision dealing with the tax intercept program].) While it is conceivable to formulate an argument that the actions of the Hearing Examiners might fall within a broader grant of general authority, such as CPLR *570 5240, the invocation of broader powers to cover these actions is both unnecessary and may invite other problems.[2]
Fourth, a careful reading of the transcripts in the matters before this court reveals that in a not insignificant number of instances the Hearing Examiners acted with respect to the IEOs out of an apparent conviction that the Commissioner, through its SCU, could not be relied upon or trusted to take the necessary further administrative action with respect to the IEOs.[3] While this court will not comment upon whether this negative expectation on behalf of the various Hearing Examiners who so acted was grounded in reality, nonetheless mistrust alone, however fervid, is not a proper basis for declining to refer a matter to the administrative agency before which it would ordinarily belong.
Fifth, and related to the previous point, if a primary objective of the child support enforcement legislation, both at the Federal and State levels, is to strengthen the operation of Support Collection Units (see, sponsor’s mem, 1985 NY Legis Ann, at 286), then this objective is better served by referring appropriate administrative matters to those units, rather than not making such referrals. Although in the short run there may be difficulties, in the longer run the agency would hope-, fully gain the experience in properly addressing the types of issues it was set up to deal with in the first place.
This court is cognizant of the likely fact that certain Hearing Examiners involved in the cases before this court took action with respect to the IEOs out of a well-intentioned desire to speedily resolve all aspects of the cases before them. This otherwise reasonable objective is all the more understandable since the Hearing Examiners were dealing mainly with pro se litigants for whom prompt and efficient relief is an *571 important value. But this objective does not outweigh the more compelling arguments, outlined above, for referring the matters to the administrative unit that originally issued the IEO. On the other hand, if the Commissioner is to insist that the matters at issue should have properly gone back to the Commissioner’s own offices for resolution, as this court has decided it had a right to do, then the Commissioner also has a reciprocal obligation to ensure that these pro se litigants receive prompt and effective relief. Accordingly, this court strongly advises the Commissioner to review the operational procedures of its Support Collection Units to ensure that its claim of authority will be backed by a capacity for efficient and timely action.[4]
III.
For the foregoing reasons, this court holds that, with respect to the objections before the court, the Hearing Examiners should have declined to vacate or modify the IEOs in question, and instead should have referred the litigants to the appropriate Support Collection Unit of the Commissioner for further action consistent with the Hearing Examiners’ own orders.
However, because the actions by the Hearing Examiners complained of have, at this point in time, resulted in orders *572 already issued to the respondents’ various employers, this court will apply its ruling prospectively[5] only, since to do so otherwise would invite further difficulties if not chaos for these respondents.
[Decision edited for purposes of publication.]

. CPLR 5241 (b) would not appear to add anything to such an argument since it, by "renvoi”, relates back to the CPLR 5241 (e) mistake of fact provision.

. See, Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR 5241, 1987 Pocket Part, at 102 (cautioning on an expansive use of CPLR 5240).

. Perhaps reflective of these attitudes were the rather acerbic comments of the Hearing Examiner in one of the instant matters before the court, Commissioner (Wilson) v Wilson (docket No. F 8843/87k): "Ask me why half of [the IEOs] are incorrect because they just spit them out without anyone reviewing these files. And I really find it very difficult because I find that you are doing an injustice to these people who are losing a day’s wages and I’d love to see somebody sue the Support Collection Unit for those lost wages, when they do it incorrectly and this man had a letter in May that he obtained from this court”.

. The Commissioner’s supplemental brief claims that "SCU also has procedures for amending the income execution and refunding money to respondents where circumstances have changed since the income execution”, referring to various DSS forms and "internal procedural memoranda” that were appended to the supplemental brief. However, the need for the Commissioner to review its procedures, in terms of this decision, is highlighted by the fact that only one of the many appended documents appeared to address the matters before this court, and only in a tangential if not obscure manner. To the extent that this "informational memorandum” is designed to deal with the issues before the court, it would appear to rely on communications between the respondents and so-called SCU "Enforcement Officers”. It is doubtful that respondents are or have been made aware of these procedures, or how to invoke them.
At a minimum the Commissioner should review its administrative procedures with a view toward (1) advising respondents of how to communicate with its SCUs with respect to, not only "mistake of fact claims”, but any problems that arise with respect to outstanding IEOs; and (2) providing clear coordination and liaison between its SCUs and the Hearing Examiners of this court.

. Defined to mean any orders of the Hearing Examiners which are issued subsequent to the date of this decision.