OPINION OF THE COURT
Jane S. Solomon, J.
In this CPLR article 78 proceeding, petitioner contends that respondent has improperly failed to limit its income executions against him to the portion of his income which exceeds the "self-support reserve”, or 135% of the Federal poverty level, while respondent asserts that the self-support reserve is inapplicable to parents in arrears in their child support obligations. A review of the relevant statutes and their legislative history supports respondent’s position.
THE SUPPORT ORDERS
Petitioner, Wilson Torres, is the father of two children, Jessilyn, age 4, and Wilson, age 3, whose mothers obtained Family Court orders of support directing petitioner to contribute certain sums to the support of the children. Respondent, Support Collection Unit (SCU), an entity within the New York City Department of Social Services Human Resources Administration, was established, pursuant to Social Services Law § 111-h, "to collect, account for and disburse funds paid pursuant to any order of child support”, and is enforcing the Family Court orders against petitioner.
Jessilyn’s mother, Nancy Rodriguez (Rodriguez), commenced her support proceeding in 1988, and obtained an order directing petitioner to pay $15 per week. In 1991, Wilson’s mother, Susanna Villegas (Villegas), obtained an order directing payment of $280 per month, including $12 per month for arrears.
Petitioner failed to make payments (because of an alleged *631 drug problem) and, as a result, a Family Court Hearing Examiner found him to be in default of both support orders, and SCU served two income executions on petitioner’s employer pursuant to CPLR 5241 (b). In response, in October 1992, petitioner sought modification of both orders of support. On November 18, 1992, a Hearing Examiner amended the Villegas support order from $280 per month to $95 biweekly, including $3 for arrears. On February 8, 1993, the Rodriguez support order was altered only by the addition of $2 weekly for new arrears. As a result, on March 10, 1993, SCU served two new income executions on petitioner’s employer which directed deductions of $195 and $134 biweekly, based on the Villegas and Rodriguez support orders respectively; the extra $100 in each is to enable petitioner to catch up on his large arrears.
Petitioner challenges these income executions on the ground that their enforcement has impoverished him.
EXHAUSTION OF ADMINISTRATIVE REMEDIES
As a preliminary matter, it must be determined whether petitioner is barred from seeking judicial review of the income executions because he failed to exhaust his administrative remedies. SCU argues that petitioner did not notify it of any errors to his detriment pursuant to Family Court Act § 440 (1) (b),[1] or of a mistake of fact, within 15 days, as provided in CPLR 5241 (e). Under that section, a debtor may only seek relief from the execution if he can establish a "mistake of fact”, narrowly defined in subdivision (a) (8) as "an error in the amount of current support or arrears or in the identity of the debtor or that the order of support does not exist or has been vacated”.[2]
Petitioner counters that he did not seek SCU’s review *632 because he was not notified as provided under CPLR 5241 (d).[3] Although the statute does not require that petitioner receive notice, service must be attempted, and SCU does not provide any proof of such an attempt. Courts have vacated income executions where the notice requirements of CPLR 5241 clearly have not been met. (See, Cramer v Cramer, 140 AD2d 990 [4th Dept 1988]; Smith v Bowen, 135 Misc 2d 855 [Sup Ct, Saratoga County 1987].)
In any event, as petitioner argues, SCU’s review would be futile here since, as indicated in its answer to the petition, SCU denies that it must consider petitioner’s needs in determining the amount of the income taken. Furthermore, the objection raised by petitioner is not a "mistake of fact” as defined by CPLR 5241 (e), and is not ministerial in nature. Therefore, the petition is reviewed more appropriately by the court rather than SCU. (Cf., Matter of Commissioner of Social Servs. v Sealy, 139 Misc 2d 563, 568 [Fam Ct, NY County 1987] [finding that SCU, rather than the court, should review objections to various income executions "(which) do not clearly lie within the CPLR 5241 (e) 'mistake of fact’ process * * * because the actions complained of are largely ministerial in nature”].)
SCU ENFORCEMENT
CPLR 5241 gives SCU authority to issue and enforce an income execution, without court intervention, when a debtor is in default.[4] Subdivision (a) (7) defines a default as the failure to make three full payments, or total arrears equal to, or greater than, one month’s full payment. CPLR 5241 (b) provides that the amount deducted from a debtor’s income "shall be sufficient to ensure compliance with the direction in the order of support, and shall include an additional amount to be applied to the reduction of arrears.” The statute also provides that the amounts deducted from income shall not exceed 55% *633 of a debtor’s disposable earnings (or the earnings of a debtor after deductions of any amounts required by law) where, as here, a debtor supports more than one spouse or dependant child and has over 12 weeks of accumulated arrears.
Petitioner asserts, without any evidentiary support, that his biweekly net income is $471 and that his rent is $546 per month. The deductions based on the Villegas and Rodriguez support orders total $329 or almost 70% of petitioner’s biweekly net income. Yet, petitioner alleges that the deductions from his income equal the 55% statutory maximum (or $259.05 biweekly). Although neither party says so, this apparent discrepancy can be explained by reference to CPLR 5241 (h).[5] Under CPLR 5241 (h), petitioner’s employer cannot withhold the full $329 from his paycheck but must apportion the amounts taken among petitioner’s creditors on a pro rata basis, up to the 55% statutory maximum. Accordingly, SCU’s income executions comply with the provisions of CPLR 5241, which permit it to take amounts beyond the orders of support to pay arrears, subject to the máximums contained in CPLR 5241 (g).
SELF-SUPPORT RESERVE
Petitioner asserts that SCU must consider his ability to pay whether or not the amount of income withheld falls within the statutory limits. In particular, petitioner argues that the income executions are invalid because the amount withheld leaves him with an income below the self-support reserve, defined in Domestic Relations Law § 240 (1-b) (b) (6) and Family Court Act § 413 (1) (b) (6) as 135% of the Federal poverty level or a net biweekly salary of $353.60 for 1992 and $361.88 for 1993. As applied to petitioner, no more than about $110 could now be withheld from his biweekly pay, or close to the base support obligations set by the Hearing Examiners before arrears are included. Petitioner’s argument is based on an interpretation of the legislative intent of the statutes at issue.
The New York State Support Enforcement Act of 1985, *634 which enacted CPLR 5241, was intended "[t]o improve child support enforcement and to comply with the Federal Child Support Enforcement Amendments of 1984[6] * * * [by providing] a comprehensive and aggressive approach to securing the children of New York their legal entitlement.” (Mem of State Executive Dept, 1985 McKinney’s Session Laws of NY, at 3162.) Petitioner asserts that the tough enforcement measures of the 1985 legislation must be read in conjunction with the 1989 Child Support Standards Act (CSSA).[7]
The CSSA enacted "a fundamental reform of the child support system in New York to ensure an appropriate and consistent level of support for children, without discouraging work efforts on the part of parents.” (Legislative Support Mem, Bill Jacket, L 1989, ch 567.) In keeping with these goals, the Legislature established a statutory "method for determining an adequate level of support in actions involving child support.” (Mem of State Executive Dept, 1989 McKinney’s Session Laws of NY, at 2208.) Under the CSSA, where applying the statutory formula leaves the noncustodial parent with less than the self-support reserve, the court is required to fix the child support obligation at $50 a month or the difference between the noncustodial parent’s income and the self-support reserve, whichever is greater.[8] (See, Domestic Relations Law § 240 [1-b] [d].)
Contrary to petitioner’s argument, the self-support reserve provisions contained in Domestic Relations Law § 240 and Family Court Act § 413 do not provide a ceiling on the amount of income which may be garnished under the facts here. Domestic Relations Law § 240 and Family Court Act § 413 speak only to the determination of child support obligations and do not cover situations where a parent defaults on an obligation which, when initially fixed, considered his or her ability to pay.[9] Although the results of the 55% withholding from petitioner’s salary are harsh, the Legislature has spoken, *635 and the court cannot defeat its intention to impose severe remedies on defaulting parents, as expressed in the unambiguous provisions of CPLR 5241.[10] (See, Matter of M.R., NYLJ, May 10, 1993, at 29, col 6 [Fam Ct, NY County].) Because the statutes at issue are unambiguous, the court cannot "resort to other means of interpretation.” (See, Di Marco v Hudson Val. Blood Servs., 147 AD2d 156, 158 [1st Dept 1989], citing McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b].) Also, the legislative history of the CSSA indicates no intention to amend the enforcement mechanism contained in CPLR 5241.
ACCOUNTING ISSUE
Petitioner contends that SCU has not properly credited him for $5,547.61 deducted from his income between October 1992 and April 1993, and that no more arrears are due on the Rodriguez order. In response, SCU submits statements of arrears dated June 4, 1993 for both support orders which cover only part of the period of which petitioner complains. The statements indicate that, at least to some extent, SCU has been crediting petitioner’s accounts about one month after each income deduction. However, consistent with petitioner’s contention, the statement , of arrears for the Rodriguez order indicates an overpayment of $859.12. Petitioner did not reply to this material.
Since May 13, 1993, when I signed petitioner’s order to show cause, SCU has been stayed from collecting more than $125 biweekly. By now, SCU may have caught up in its crediting of petitioner’s accounts, including the conceded overpayment. However, if the accounting issue raised by the petition is not moot, the SCU should provide petitioner with a full record of his payments of arrears, and properly credit him with the overpayment. Failing such a resolution, a Referee will be appointed to resolve the issue.
JOINING THE STATE
Contrary to SCU’s contention, the State of New York is not an indispensable party, since the actions of the collection unit *636 and not the State are at issue here. (See, 208 E. 30th St. Corp. v Town of N. Salem, 88 AD2d 281 [2d Dept 1982].)
Accordingly, because the SCU was within its statutory authority in issuing and enforcing the income execution orders, the petition is granted only to the extent of directing respondent to reconcile petitioner’s accounts forthwith consistent with the foregoing, and is otherwise denied. The stay of collecting more than $125 biweekly is vacated.

. Family Court Act § 440 (1) (b) provides, in part, "if the support collection unit makes an error in the issuance of an income execution pursuant to this paragraph, and such error is to the detriment of the debtor, the support collection unit shall have thirty days after notification by the debtor to correct the error.” This provision, which concerns immediate income withholding pursuant to CPLR 5241, is not clearly relevant here.

. The severely restricted review of income executions provided under CPLR 5241 (e) is intended to take away all excuses which might enable a debtor to evade his or her child support obligations. (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 5241, 1993 Pocket Part, at 137.)

. CPLR 5241 (d) provides that "[t]he creditor shall serve a copy of the execution upon the debtor by regular mail to the debtor at his last known residence or such other place where he is likely to receive notice, or in the same manner as a summons”.

. The enforcement mechanism under CPLR 5241 also operates where a parent is not in default. Domestic Relations Law § 240 (2) (b) and Family Court Act § 440 (1) (b) establish a procedure for immediate wage withholding under CPLR 5241 without awaiting arrearage, and Family Court Act § 440 (1) (a) and § 449 expressly make retroactive child support enforceable under CPLR 5241.

. CPLR 5241 (h) provides, in part, that "[i]f an employer or income payor is served with more than one execution pursuant to this section * * * and if the combined total amount of the deductions to be withheld exceeds the limits set forth in subdivision (g) of this section, the employer or income payor shall withhold the maximum amount permitted thereby and pay to each creditor that proportion thereof which such creditor’s claim bears to the combined total.”

. Pub L 98-378, 98 US Stat 1305.

. The CSSA was mandated by the Family Support Act of 1988 (Pub L 100-485, 102 US Stat 2343).

. This rule is altered where the child support obligation reduces the noncustodial parent’s income below the Federal poverty level; then a parent is only required to pay $25 a month or the difference between the noncustodial parent’s income and the self-support reserve, whichever is greater. (Domestic Relations Law § 240 [1-b] [d].)

. Petitioner here does not seek relief under CPLR 5240, which covers discretionary reductions of income executions, and it will not be implied.

. In fact, although not required by the Federal legislation under which New York adopted CPLR 5241, the New York State Legislature selected the highest wage withholding percentage permitted by Federal law under section 303 (b) of the Consumer Credit Protection Act. (See, S Rep No. 387, 98th Cong, 2d Sess 31, reprinted in 1984 Code Cong & Admin News 2397, 2423.)