STAMFORD RIDGEWAY ASSOCIATES *v.* BOARD OF REPRESENTATIVES OF THE CITY OF STAMFORD
(13805)
(13806)

EDWARD BENENSON *v.* BOARD OF REPRESENTATIVES OF THE CITY OF STAMFORD
(13807)

BULL'S HEAD MEDICAL ASSOCIATES *v.* BOARD OF REPRESENTATIVES OF THE CITY OF STAMFORD
(13808)

HEALEY, SHEA, GLASS, COVELLO and HULL, Js.

Argued December 7, 1989—decision released April 3, 1990

*Howard C. Kaplan,* with whom, on the brief, was *Edward M. Kweskin,* for the appellant (Stamford Ridgeway Associates and Edward Benenson).

*Michael J. Cacace,* with whom was *Margaret Mary Pitt,* for the appellants (Bull's Head Medical Associates and John Fiorito).

*Frank W. Murphy,* with whom, was *Barbara L. Coughlin,* for the appellee (defendant in each case).

ARTHUR H. HEALEY, J. The principal issue that we decide in these appeals is whether § C-552.2[1] of the Stamford charter permits the board of representatives to vote on separate zone changes contained in one zoning application or whether the board of representatives must act on the entire application. The trial court held that the board was required to act unitarily on the entire application and remanded the case to the board to sustain or overrule the zone changes as a whole. We find error and remand for further proceedings.

On March 11, 1985, the zoning board of the city of Stamford approved a comprehensive rezoning plan for large areas of the city, on a neighborhood basis, that was to become effective March 26, 1985. The rezoning consisted of eight separate applications brought by the zoning board to itself. Each application covered large sections of the city of Stamford and included areas for which various zone changes were proposed, as well as other areas that were to remain unchanged. Application No. 84-053, which is involved in these appeals, was

---

[1] Section C-552.2 of the Stamford charter provides: "After the effective date of the Master Plan, if twenty percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Zoning Map, or if the owners of twenty percent or more of the privately-owned land located within five hundred feet of the borders of such area, file a signed petition with the Zoning Board, within ten days after the official publication of the decision thereon, objecting to the proposed amendment, said decision shall have no force or effect but the matter shall be referred by the Zoning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The Board of Representatives shall approve or reject such proposed amendment at or before its second regularly-scheduled meeting following such referral. When acting upon such matters the Board of Representatives shall be guided by the same standards as are prescribed for the Zoning Board in Section C-550 of this Act. The failure of the Board of Representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the Zoning Board's decision."

the eighth application initiated by the zoning board as part of its comprehensive rezoning plan, proposed to rezone various areas in the Downtown/Bull's Head area. This application affected a large area of Stamford extending approximately two miles from north to south and approximately one mile from east to west. This application also included a number of zoning districts that were not changed and a number of districts that were changed. In some instances, changed districts on this application were separated from other changed districts by areas of land unaffected by any change. The central business district as shown on this application remained unchanged. In addition, the proposed changes affected such land uses as commercial, single family residential and multifamily residential.

The plaintiffs in these appeals are all owners of property located in the Downtown/Bull's Head neighborhood who were adversely affected by the proposed rezoning.[2] Pursuant to § C-552.2 of the Stamford char-

---

[2] Stamford Ridgeway Associates (Ridgeway) owns property between Bedford Street and Summer Street and north of Sixth Street. It is a thirteen acre site improved with a shopping center. This property was zoned C-L (limited business district) until the zoning board approved the zone change as part of application No. 84-053, which rezoned that area to C-B (community business district). The rezoning rendered large areas of the shopping center nonconforming.

John Fiorito's property is located south of the Ridgeway property, between Second Street and Sixth Street. The property had been zoned C-L. As part of application No. 84-053, however, the property was rezoned to C-B.

Bull's Head Medical Associates owns property located at 22 Long Ridge Road. The property was zoned C-L. As part of application No. 84-053, however, the property was rezoned to C-N (neighborhood business district). The rezoning reduced the plaintiff's property's floor area ratio development potential to approximately 25 percent of what it had been.

Edward Benenson owns property in the general area of High Ridge Road south of Oaklawn Avenue and north of Bedford Street, and Long Ridge Road from Cold Spring Road to Bedford Street. It is a 25,450 square foot parcel improved with several retail stores. The property was zoned C-L. As part of application No. 84-053, however, it was rezoned to C-N. The zone change rendered Benenson's property nonconforming.

ter, the plaintiffs each filed separate petitions with the zoning board challenging the zoning board's proposed plan to rezone their respective areas and requesting that the matter be referred to the board of representatives. The chairman of the zoning board, acting in accordance with § C-552.2, by letter dated March 29, 1985, referred its findings, recommendations and reasons in connection with its action in approving, as modified, application No. 84-053, to the board of representatives (board).

The board, which consists of forty elected members, received sixteen petitions; several of the petitions pertained to zone changes within application No. 84-053. On May 2, 1985, the board held a public hearing concerning the various petitions filed. On May 6, 1985, the board voted on thirteen of the sixteen petitions. It rejected seven of the petitions, approved three and took no action on three. The board took no action on three of the petitions because of the lack of majority votes of the entire membership of the board needed on each petition to reject the proposed zone changes. These three petitions involved Bull's Head Medical Associates (Bull's Head), Stamford Ridgeway Associates (Ridgeway) and Benenson.[3] The effect of "no action" by the board constituted an affirmance of the changes proposed by the zoning board. The only successful petitioner before the board in these appeals was John Fiorito; the board of representatives sustained his appeal and returned his property to a C-L zone (limited business district).

Prior to considering any of the matters raised in the petitions referred to the board of representatives by

---

[3] The board of representatives voted on the plaintiffs' petitions as follows:

|  | Yes | No | Abstention | Not voting |
|---|---|---|---|---|
| Ridgeway (Petition No. 12) | 13 | 20 | 1 | 4 |
| Bull's Head (Petition No. 10) | 15 | 20 | 1 | 2 |
| Benenson (Petition No. 10) | 15 | 20 | 1 | 2 |

the zoning board, however, the president of the board of representatives, Sandra Goldstein, engaged independent counsel, Attorney Robert A. Fuller, to analyze and render an opinion concerning several questions with respect to the petitions filed.[4] Fuller was asked, inter alia, to render an opinion on how the 20 percent requirement in § C-552.2 is computed to determine whether the petitions filed were valid. Section C-552.2 provides in part: "[I]f twenty percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Zoning Map, or if the owners of twenty percent or more of the privately-owned land located within five hundred feet of the borders of

---

[4] Sandra Goldstein, president of the Stamford board of representatives, wrote the following letter on April 19, 1985, to Attorney Robert A. Fuller:

"Robert A. Fuller, Esq.

Lovejoy, Heffernan, Rimes and Cuneo, Attys.

P.O. Box 265

Wilton, Connecticut 06897

Dear Bob:

There are several opinions I require on behalf of the Stamford Board of Representatives regarding the five referrals (Applications 84-024, 84-029, 84-042, 84-046, and 84-053) of Zoning Board actions on our agenda for May 6, 1985.

First, are the above referrals governed by the provisions of Section 552.2 of the Stamford Charter?

Second, if Section 552.2 applies, how is the 20% requirement of that Section to be interpreted for applications in which multiple zone changes occur within a single application?

Third, if each zone change is considered a separate action, what effect does a Board of Representatives' decision have on the remainder of changes in the same application?

Thank you for your attention to this matter.

Sincerely,
/s/Sandra Goldstein, President
18th Board of Representatives

SG:HMM

cc: Board Members

Corp. Counsel Jay Sandak

John Smith, P&Z Director

Zoning Board members"

Attorney Robert A. Fuller later became a Judge of the Superior Court in 1986.

such area, file a signed petition with the Zoning Board, within ten days after the official publication of the decision thereon, objecting to the proposed amendment, said decision shall have no force or effect but the matter shall be referred by the Zoning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations and reasons." In a letter dated April 22, 1985, Fuller stated that prior to "setting forth how the twenty percent computation is made, it is important to determine what land area it encompasses." In interpreting the language "a proposed amendment to the Zoning Map," in § C-552.2 of the charter, Fuller opined "that each separate zone change or amendment (even though combined with other amendments in one application) may be referred from the Zoning Board to the Board of Representatives if a proper petition is filed. Each zoning amendment may cover more than one property and includes all contiguous properties for which the same changes were made, as shown on the various zoning maps which were part of the applications and decisions of the Zoning Board."

In making this determination, Fuller rejected two other possible interpretations: "(1) That the right to petition refers to the entire area included in each zoning application acted upon by the Zoning Board; and (2) That the twenty percent applies to all of the zone changes contained within each application." (Emphasis omitted.) Fuller stated that "these interpretations, the first more than the second, lead to bizarre and irrational results, and frustrate the purpose of the charter provision. Section 552.2 is designed to give the right to appeal to the Board of Representatives if enough persons affected by a zoning amendment request reconsideration by the Board of Representatives." Fuller further stated: "Once the area of each zoning amendment is established, there are two computations that must

be made to determine whether each petition is sufficient. Section 552.2 allows either: (1) twenty percent or more of the property owners in the area included in the zone change; or (2) twenty percent or more of the owners of land within five hundred feet of the zone change to file the protest petition." On the basis of this opinion, the board of representatives voted on the petitions.[5]

[5] Fuller's letter of April 22, 1985, to Sandra Goldstein was the following:
"Sandra Goldstein, President
Board of Representatives
429 Atlantic Street
Stamford, CT 06901
Re: Petitions to the Board of Representatives to Review Zoning Amendments Adopted by the Stamford Zoning Board
Dear Mrs. Goldstein:
By letter of April 19, 1985, you have requested an opinion from me as special counsel on legal questions arising from petitions which have been filed with the Board of Representatives to request review by it of zone changes made by the Stamford Zoning Board. The main issue centers over validity of the petitions and specifically their compliance with provisions of the Stamford Charter.
The pertinent facts here are as follows. The Stamford Zoning Board proposed and held hearings upon several applications to consider changes or amendments to the Stamford Zoning Map. Each application covered a fairly large area of the city, encompassing property on many streets and in several zones. Within each of these geographical areas covered by each application there were numerous proposed zone changes, although in each instance there were properties for which no zone change was proposed. Following public hearings, the Zoning Board voted to make some proposed zone changes within each geographical area, following to a large extent the Zoning Board's original proposals, although some changes were made following the input received at the public hearings. After the Board reached decisions on the applications before it, each of which contained multiple zone changes, petitions were filed by property owners in various areas of the city, requesting reconsideration by the Stamford Board of Representatives of specific zone changes or amendments, in accordance with the Stamford Charter.
An initial question has been raised as to which section of the Stamford Charter governs this problem. The applicable section is section 552.2 entitled 'Referral to Board of Representatives by Opponents of Proposed Amendment to Zoning Map After the Effective Date of the Master Plan.' Since the Master Plan has already been amended, the procedural sections of the

## Ridgeway, Bull's Head and Benenson appealed the action of the board of representatives to the Superior

Charter concerning the Master Plan, such as section 522.4, do not apply here. Section 552.2 provides as follows:

'After the effective date of the Master Plan, if twenty percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Zoning Map, or if the owners of twenty percent or more of the privately-owned land located within five hundred feet of the borders of such area, file a signed petition with the Zoning Board within ten days after the official publication of the decision thereon, objecting to the proposed amendment, said decision shall have no force or effect but the matter shall be referred by the Zoning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The Board of Representatives shall approve or reject such proposed amendment at or before its second regularly-scheduled meeting following such referral. When acting upon such matters the Board of Representatives shall be guided by the same standards as are prescribed for the Zoning Board in Section 550 of this Act. The failure of the Board of Representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the Zoning Board's decision.'

The main question presented by your letter is how the 20% requirement in Section 552.2 is computed, as this will determine whether valid petitions have been filed. Before setting forth how the twenty percent computation is made, it is important to determine what land area it encompasses. The Charter provision refers to 'land in the area included in *any* proposed *amendment* to the Zoning Map,' *or* 'land located within five hundred feet of the borders of such area.' Where a municipal charter is enacted either by special act of the legislature or under the Home Rule Act, language in the charter provision is controlling. *West Hartford Taxpayers Ass'n.* v. *Streeter,* 190 Conn. 736, 742. Section 552.2 was part of a special act enacted by the legislature, and should be construed in the same manner as a statute. To determine the intent of a charter provision, the enactment must be examined in its entirety and its parts reconciled and made operative so far as possible. *New Haven Police Local 530* v. *Logue,* 188 Conn. 290, 297. When interpreting a local charter or ordinance provision, the language used in the applicable provision is controlling, but when two constructions are possible, the one which makes the provision effective and workable should be adopted rather than the one which leads to difficult and possibly bizarre results. *Maciejewski* v. *West Hartford,* 194 Conn. 139, 152. The question becomes what was the legislative intent and meaning of the language 'any proposed amendment to the Zoning Map' as used in section 552.2 of the Stamford Charter. *Burke* v. *Board of Representatives,* 148 Conn. 33, 43.

Several provisions in Chapter 55 of the Stamford Charter refer to amendments or proposed amendments to either the Zoning Map or the Zoning

Court. The plaintiffs alleged in their complaints, inter alia, that the voting procedure used by the board was

Regulations. An amendment is a change, alteration or correction. Each of the applications before the Zoning Board covered, for understandable reasons, large sections, areas or neighborhoods of Stamford. However, each application included both areas for which zone changes were proposed, as well as other areas which were recommended to remain unchanged. Since the applications were part of complex, comprehensive rezoning of large sections of Stamford, each application contained multiple zoning amendments or zone changes. The Charter does not contain any prohibition in combining more than one proposed zone change in the same general area into one application. However, when final action was taken by the Zoning Board, each application granted by it in fact consisted of many separate amendments to the Zoning Map. Section 552.2 allows a petition to be filed concerning the area included in 'any proposed amendment to the Zoning Map.' Accordingly, it is my opinion that each separate zone change or amendment (even though combined with other amendments in one application) may be referred from the Zoning Board to the Board of Representatives if a proper petition is filed. Each zoning amendment may cover more than one property and includes all contiguous properties for which the same changes were made, as shown on the various zoning maps which were part of the applications and decisions of the Zoning Board. A change of zone for an area from one zone into two different zones would be two separate zone changes. Also, if an area was previously divided into two different zones but it is changed into one new zone, this would be two separate zoning amendments even though both areas are now contained in the same zone.

Two other possible interpretations of Section 552.2 have been suggested: (1) That the right to petition refers to the entire area included in each zoning *application* acted upon by the Zoning Board; and (2) That the twenty percent rule applies to all of the zone changes contained within each application. Both of these interpretations, the first more than the second, lead to bizarre and irrational results, and frustrate the purpose of the charter provision. Section 552.2 is designed to give the right to appeal to the Board of Representatives if enough persons affected by a zoning amendment request reconsideration by the Board of Representatives. As previously noted, each of the zoning applications included properties for which no zone changes were proposed. Accordingly, they are not 'land in the area included in any proposed amendment to the Zoning Map.' Also, the right to appeal to the Board of Representatives would, as a practical matter, be completely frustrated if a large percentage of the area included in the application was not proposed for a zone change (for example, the entire City of Stamford), as in such a case it would be impossible to obtain enough signatures to meet the twenty percent requirement. The same problem exists, although on a lesser scale, if all of the zoning *amendments* are considered together in determining if enough property owners signed the petition. The rights of a group

illegal in that it prevented the petitioners from obtaining the affirmative majority vote of the board and the

of dissatisfied property owners to appeal their zone change to the Board of Representatives should not be determined by the extent to which owners of property in other areas are satisfied by their own zone changes, particularly since these other zone changes may involve different zone classifications or may be located a considerable distance away. Stated another way, the ability to petition the Board of Representatives should not be determined by how many separate zone changes are combined into one application. 'A charter of a city must be construed, if possible, so as reasonably to promote its ultimate purpose.' *Arminio* v. *Butler,* 183 Conn. 211, 218. It also could not have been the intent of the legislature to allow objectors to one zone change to be able to affect property owners in another, distant area, by filing a protest petition including twenty percent of the land involved in both zone changes. If all of the amendments were considered together in determining the twenty percent requirement, the Board of Representatives could be burdened with reviewing zone changes in areas where both the Zoning Board and the property owners in the zone were completely satisfied with that zoning amendment. Such a result would also be contrary to the intent of the charter provision, which limits the right to file a protest petition to persons in the affected area or within five hundred feet of it. For these reasons, all of the amendments should not be combined in determining whether a particular petition is sufficient. The same concept applies whether or not two Zoning Map amendments for noncontiguous areas are to the same zone or a different zone.

Once the area of each zoning amendment is established, there are two computations that must be made to determine whether each petition is sufficient. Section 552.2 allows either: (1) twenty percent or more of the property owners in the area included in the zone change; or (2) twenty percent or more of the owners of land within five hundred feet of the zone change to file the protest petition. In both cases, land which is not privately owned (e.g. municipal land) is excluded from the computation. This type of provision refers to twenty percent of the *area* and not twenty percent of the number of lots or twenty percent of the owners. 'What is required is a protest filed by the owners (whether one owner or many owners) of at least twenty percent of certain areas. It is not the owners of twenty percent of the lots with whom we are concerned but the owners of twenty percent of certain areas of lots.' *Park Regional Corporation* v. *Town Plan and Zoning Commission,* 144 Conn. 677, 684. It is also clear from the charter provision that two computations must be made. A petition may be filed by owners of twenty percent of the land included within the proposed zone change. In addition a petition may be filed by twenty percent of the owners of property within five hundred feet in all directions of the property included in the proposed zone change. The two categories are not added together in computing the twenty percent. *Muller* v. *Town Plan and Zoning Commis-*

interpretation of the voting results by the board ignored the precedent set in *Schlesinger* v. *Board of Represen-*

*sion,* 145 Conn. 325. In making the first computation, where a property is divided by the zone line, only the property in the area of the zone change is included. In making the second computation, only that portion of a property owner's lot that is within five hundred feet of the zone change area is included. The *Muller* case interpreted a similar provision in section 8-3 (b) of the Connecticut General Statutes, and in discussing the second computation the Court stated at page 331: 'If the statute is considered to mean land bounded by a line drawn at a distance of five hundred feet from every point of the outer boundary of the property subject to the proposed change, the problem of finding the total area to which the twenty percent rule is to be applied becomes fairly simple and, as already noted, the construction furnishes an exact standard for the determination of that area.'

It is also clear from *Wolden* v. *City of Stamford,* 22 Conn. Supp. 164, which interpreted section 552.2 of the Charter, that all of the property owners of a specific piece of property must sign the petition for their land to be counted in determining whether either twenty percent requirement is met.

The next question concerns what proposed amendments come before the Board of Representatives for action, what action the Board may take, and what affect its action has upon other properties included in the zoning applications. The only applications before the Board of Representatives will be the specific zone changes for which valid petitions were filed. Other zone changes in the same area are not referred under the charter provision to the Board of Representatives for action. Since more than fifteen days have passed from the decision of the Zoning Board on all of the zoning applications, all of the zone changes contained in those applications (other than those for which valid petitions have been filed or appeals taken to the Superior Court as allowed by section 556 of the Stamford Charter) would be final. If the Board of Representatives rejects a proposed zoning amendment brought to it by a petition this would not overturn the other zone changes made by the Zoning Board, even if they were contained in the same application, again because each amendment or change to the Zoning Map is separate from the others, and they are not conditional upon each other. Generally where a zoning authority takes two actions simultaneously, even for the same property, each action stands on its own. *Pecora* v. *Zoning Commission,* 145 Conn. 435, 443; *Langer* v. *Planning and Zoning Commission,* 163 Conn. 453, 459; *Weigel* v. *Planning and Zoning Commission,* 160 Conn. 239, 250; *Parish of St. Andrews Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 354, 355. Accordingly, the Board of Representatives need not concern itself with zone changes not covered by the petitions.

From past experience, you are aware of the time limits imposed by section 552.2 of the Charter and the requirement of a majority vote required by section 556.1. *Schlesinger* v. *Board of Representatives,* Superior Court

*tatives,* Superior Court, judicial district of Stamford, Docket No. CV-77-0019744-L (December 9, 1980). The plaintiffs' cases were consolidated for trial.[6] Trial began on October 21, 1987, and occupied several days. On November 12, 1987, Fiorito moved to be made a party defendant to Ridgeway's appeal. The trial court denied Fiorito's motion on November 24, 1987.

On November 10, 1988, the trial court filed its memorandum of decision. The court, without addressing the merits of the plaintiffs' claims, sustained their appeals and reversed the action of the board of representatives in toto and remanded the matter to the board of representatives to sustain or overrule the proposed zone changes as a whole. The court stated that, although the changes adopted in application No. 84-053 were numerous and detailed, the zoning board adopted them as a "single package." The court further held that the Stamford charter did not permit the board of representatives to act "piecemeal" on each zone change within

at Stamford, decision dated December 9, 1980. With each of the zoning amendments that go to the Board of Representatives, the Board acts as a zoning authority, acts in a *legislative* capacity and exercises its own independent judgment and discretion. *Burke* v. *Board of Representatives,* 148 Conn. 33, 39, 40; *Zenga* v. *Zebrowski,* 170 Conn. 55, 60. The Board of Representatives acts upon the record referred by the Zoning Board, although it may also hold a hearing, and presumably intends to do so here. Since the Board of Representatives is acting as a zoning authority it has the same broad discretion and applies the same zoning standards as are considered by the Zoning Board under section 550 of the Charter. *Burke* v. *Board of Representatives,* supra.

Very truly yours,
/s/ Robert A. Fuller"

(Emphasis in original.)

[6] The plaintiffs' cases were consolidated with cases brought by Dennis T. McCarthy and Morris Weinstein against the zoning board of the city of Stamford. These two cases were dismissed by the trial court for lack of subject matter jurisdiction. Weinstein appealed the trial court's dismissal and, pursuant to Practice Book § 4023, we transferred the case to this court. In *Weinstein* v. *Zoning Board,* 214 Conn. 400, 572 A.2d 348 (1990), we set aside the judgment and remanded the case to the trial court for further proceedings.

the one application (No. 84-053). Rather, it said that the board must reject or accept the entire application No. 84-053 as a whole because "[w]ere it otherwise, the board, by sustaining or overturning the action of the [zoning board] as to one area or another would be usurping the [zoning board's] fundamental role." The trial court, having said that "the adoption of the zoning changes [by the zoning board] was unitary," stated that the board of representatives could not vote on the application "piecemeal" because it would fragment what the zoning board had done as a whole "with the result of a patchwork design in what was intended [by the zoning board] as a seamless whole." The court further held that its decision was without prejudice to "the right of the Board to determine whether a sufficient number of petitioners sought a hearing treating the matter as a whole."

The plaintiffs moved to open, vacate and modify the judgments of the trial court. In a memorandum of decision filed March 6, 1989, the court reiterated its prior decision and denied the plaintiffs' motions. From these judgments and the court's memorandum of decision filed November 10, 1988, the plaintiffs appealed to the Appellate Court. In addition, Fiorito appealed the court's denial of his motion to be made a party defendant. Pursuant to Practice Book § 4023, we transferred the cases to this court.

It will be useful to review the charter provisions relevant to this decision. The Stamford charter gives to the planning board the power to "prepare, adopt and amend" a master plan for the city. Stamford Charter §§ C-520, C-522.1, C-522.2. It gives the zoning board the authority, after the effective date of the master plan, to amend the zoning map from time to time provided such amendment is not contrary to the general land use established for such area by the master plan. Stamford Charter § C-552. When the zoning map is

amended by the zoning board, "twenty percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Zoning Map, or if the owners of twenty percent or more of the privately-owned land located within five hundred feet of the borders of such area . . . objecting to the proposed amendment" may file a petition with the zoning board within ten days after the proposed amendment has been published. Stamford Charter § C-522.2. Specifically, as to that, we have said: "In that event, the amendment is without effect and the zoning board must refer the matter to the defendant, the board of representatives of the city, along with the zoning board's 'written findings, recommendations and reasons' for the change. . . . The board of representatives then acts to approve or reject the amendment." *Burke* v. *Board of Representatives,* 148 Conn. 33, 35–36, 166 A.2d 849 (1961).

The board of representatives is composed of two members of each of the twenty voting districts in the city. Stamford Charter § C-115. "The legislative power of the city is specifically vested in the board of representatives." *Burke* v. *Board of Representatives,* supra, 36. The authority of the board of representatives upon referral of any proposed amendment is set forth in § C-552.2, which provides in part: "The Board of Representatives shall approve or reject such proposed amendment at or before its second regularly-scheduled meeting following such referral. When acting upon such matters the Board of Representatives shall be guided by the same standards as are prescribed by the Zoning Board in Section C-550 of this Act. The failure of the Board of Representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the Zoning Board's decision." In *Burke,* we said: "That board [of representatives], in reviewing the action of the zoning board, is called

upon to perform a legislative function." *Burke* v. *Board of Representatives,* supra, 39; see *Zenga* v. *Zebrowski,* 170 Conn. 55, 364 A.2d 213 (1975). General Statutes §§ 8-9 and 8-10 permit an appeal to the Superior Court from a decision of the zoning board or the board of representatives. *Weinstein* v. *Zoning Board,* 214 Conn. 400, 572 A.2d 348 (1990).

The plaintiffs and defendant contend that the trial court erred in construing § C-552.2 of the charter to require the board of representatives to vote on the entire application as one amendment.[7] The parties maintain that § C-552.2 of the charter permits the board of representatives to vote on each separate zone change or amendment in the application for which a valid petition has been filed and does not require the board to vote on the entire application. In support of this argument, they point to rules of statutory construction, the meaning of the words "any" and "amendment" in the context of § C-552.2, and Fuller's opinion letter to the board of representatives interpreting § C-552.2. Moreover, they contend that if we agreed with the trial court's interpretation of § C-552.2, it would render the right to petition the board of representatives, as provided in that section, "virtually meaningless." We agree.

In addition, plaintiffs Ridgeway, Bull's Head and Benenson contend that the voting procedures used by

[7] Although the defendant board of representatives agrees with the plaintiffs that the trial court erred in interpreting § C-552.2 of the Stamford charter, it disagrees with the trial court's decision sustaining the plaintiffs' appeals. The board's reasoning there is that this court should remand the case to the trial court with direction to dismiss the appeal because the court failed to find that the board acted illegally, arbitrarily, or in abuse of its discretion. Although the trial court did not expressly state that the board acted "illegally, arbitrarily, or in abuse of discretion," the court's finding that the board was not permitted under § C-552.2 to vote on each separate zone change implicitly finds that the board acted illegally, arbitrarily and in abuse of its discretion.

the board of representatives were contrary to the holding in *Schlesinger* v. *Board of Representatives,* supra. Ridgeway, further, contends that it was error for the board, by "gerrymandering," to sever a portion of its petition for voting purposes. The "gerrymandering" issue involves Fiorito and other successful petitioners who, unlike Ridgeway, prevailed before the board of representatives. The trial court failed to rule on these two issues. Under the circumstances, we have chosen not to address them and, therefore, we remand the case for further proceedings.

It has been well established that a city's " ' "charter is the fountainhead of municipal powers . . . ." ' " *Cilley* v. *Lamphere,* 206 Conn. 6, 12, 535 A.2d 1305 (1988), quoting *Lombardi* v. *Bridgeport,* 194 Conn. 601, 604, 483 A.2d 1092 (1984); *Norwich* v. *Norwalk Wilbert Vault Co.,* 208 Conn. 1, 8, 544 A.2d 152 (1988). " 'The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised.' *West Hartford Taxpayers Assn., Inc.* v. *Streeter,* 190 Conn. 736, 742, 462 A.2d 379 (1983). Agents of a city, including [the board of representatives], have no source of authority beyond the charter. *Perretta* v. *New Britain,* 185 Conn. 88, 92, 440 A.2d 823 (1981)." *Cilley* v. *Lamphere,* supra. In construing a city charter, "the rules of statutory construction generally apply." Id.; *Norwich* v. *Norwalk Wilbert Vault Co.,* supra. A city charter "must be construed, if possible, so as reasonably to promote its ultimate purpose." *Arminio* v. *Butler,* 183 Conn. 211, 218, 440 A.2d 757 (1981). " 'In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws. "The real intention when once accurately and indubitably ascertained, will pre-

vail over the literal sense of the terms. When the words used are explicit, they are to govern, of course. If not, then recourse is had to the context, the occasion and necessity of the provision, the mischief felt, and the remedy in view." The language employed must be given its plain and obvious meaning, and, if the language is not ambiguous a court cannot arbitrarily add to or subtract from the words employed.' 2 McQuillin, [Municipal Corporations (3d Ed. Rev.) § 9.22, p. 685]." Id., 217–18. "A charter provision, like a statute . . . must be definite and certain. An individual must be able to determine whether his or her proposed activity is prohibited." 2 E. McQuillin, supra, § 9.22, p. 916.

The jurisdictional authority of the board of representatives here is set out in § C-552.2 of the charter. The charter provides that the zoning board "shall" refer a petition opposing an amendment to the zoning map to the board if it contains "twenty percent or more of the owners of the privately-owned land in the area included in *any proposed amendment* to the Zoning Map, or . . . twenty percent or more of the privately-owned land located within five hundred feet of the borders of such area . . . ." (Emphasis added.) Stamford Charter § C-552.2. In this case, we are only concerned with the first part of the above phrase. Determining whether a petition contains 20 percent of the signatures required depends on the land area it encompasses. Section C-552.2 states, "land in the area included in *any proposed amendment*." (Emphasis added.) The parties agree that the determinative language is "any proposed amendment." The plaintiffs first contend that the trial court misinterpreted the word "amendment" in the "any proposed amendment" language of § C-552.2. They argue that the effect of the court's decision requiring the board to vote on the entire application No. 84-053 as a whole means that the court interpreted the word "amendment" in

§ C-552.2 to include all of the areas rezoned as well as areas that went unchanged and unaffected by the zone change. The plaintiffs contend that the word "amendment" implies change and therefore it does not include areas that were not rezoned or affected by the zone change in application No. 84-053. We agree with the plaintiffs.

As the plaintiffs correctly point out, "[w]e have interpreted the word 'amendment' in reference to a statutory amendment as 'effecting a change in existing law.' *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 232, 477 A.2d 988 (1984); *State* v. *Kozlowski,* 199 Conn. 667, 676, 509 A.2d 20 (1986)." *Schultz* v. *Hartford Ins. Co.,* 213 Conn. 696, 706, 569 A.2d 1131 (1990). In addition, the word "amendment" has generally been defined as "[a] change, ordinarily for the better." Black's Law Dictionary (Rev. 4th Ed.). Moreover, in the planning and zoning context, "[a] zoning amendment is a *change* in the ordinance, enacted by the legislative authority of a municipality. . . . '[I]n a legal sense rezoning ordinarily contemplates a *change* in existing zoning rules within a district . . . which theretofore has been uniformly zoned in its entirety.' " (Emphasis added.) 3 R. Anderson, American Law of Zoning (2d Ed.) § 18.04. It is clear from these definitions that the word "amendment" implies change. " 'It is well settled that a statute must be applied as its words direct.' *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 485, 362 A.2d 785 (1975). Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended." *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 194, 567 A.2d 1156 (1989). Therefore, on the basis of the ordinary meaning of the word "amendment," we conclude that the "twenty percent" requirement in § C-552.2 is to be measured by the areas that were changed or

rezoned, and does not include the areas in application No. 84-053 that were not changed or rezoned. See *Johnson* v. *Montville,* 109 N.J. Super. 511, 518, 264 A.2d 75 (1970); *431 Fifth Avenue Corporation* v. *New York,* 270 App. Div. 241, 249, 59 N.Y.S.2d 25 (1945), aff'd, 296 N.Y. 588, 68 N.E.2d 877 (1946); 2 E. Yokley, Zoning Law and Practice (4th Ed.) § 12-2.

If we were to construe "amendment" in § C-552.2 to mean, as the trial court held, the entire application No. 84-053, it would lead to bizarre and irrational results and frustrate the purpose of the charter provision. As Fuller pointed out in his letter, the right to appeal to the board would, as a practical matter, be completely frustrated. "[I]f a large percentage of the area included in the application was not proposed for a zone change (for example, the entire city of Stamford) . . . it would be impossible to obtain enough signatures to meet the twenty percent requirement" within the ten day limitation set by the charter to petition the board. Moreover, the property owners who were not affected by any of the zone changes or amendments or those who are comfortable with their zone change will be very reluctant in signing a petition. One court has aptly noted: "Such a holding would enable a municipal agency to insure passage of a highly objectionable zoning amendment by simply combining it with another large, unobjectionable amendment. A statute must not be construed in a manner that would permit its purpose to be defeated." *208 East 30th Street Corporation* v. *North Salem,* 88 App. Div. 2d 281, 288, 452 N.Y.S.2d 902 (1982). In a zoning case where we were called upon to determine the meaning of land involved in General Statutes § 8-8 (a), we noted that " '[a] statute should not be interpreted in any way to thwart its purpose'; *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498 (1975); and that '[i]n construing a statute, common sense must be

used and courts will assume that [the legislature intended to accomplish] a reasonable and rational result . . . . ' *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 4, 363 A.2d 1386 (1975). We observe, finally, that '[t]his court traditionally eschews construction of statutory language which leads to absurd consequences and bizarre results.' *State* v. *Rodgers,* 198 Conn. 53, 61, 502 A.2d 360 (1985), and cases cited therein." *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 667, 560 A.2d 975 (1989). Therefore, we conclude that the trial court erred in construing the entire application No. 84-053 as one amendment.

This does not, however, end our analysis. Having concluded that the word "amendment" as used in § C-552.2 includes only those areas within application No. 84-053 that were rezoned or changed, we must further determine whether that provision requires a petition to contain the signatures of 20 percent of the owners of land included in all the areas rezoned in application No. 84-053 or only in an area involving a single zone change.

The plaintiffs contend that the word "any" as used in § C-552.2 and the use of the singular form of the word "amendment" indicates an "intent that one proposed amendment on a vast and extensive zoning map can be appealed by the property owners within that particular amendment." They maintain that had the framers of the charter intended to "require appeals by 'all' of the amendments, the plural letter 's' would have been placed at the end of the word 'amendment' so as to refer to 'all amendments' or 'any amendments,' but the word 'amendment' is singular in the Stamford charter."

In *Muller* v. *Town Planning & Zoning Commission,* 145 Conn. 325, 328, 142 A.2d 524 (1958), this court interpreted a zoning statute that required petitions

opposed to a proposed zoning change to contain, inter alia, signatures of owners of " 'twenty percent or more of the area of . . . the lots within five hundred feet in *any direction* of the property included in the proposed change . . . .' " (Emphasis added.) In construing the word "any" in the statute, we stated: "The word 'any' has a diversity of meanings and may be employed to indicate 'all' or 'every' as well as 'some' or 'one.' 3A Words & Phrases (Perm. Ed.) Its meaning in a given statute depends upon the context and subject matter of the statute. In *New York, N.H. & H.R. Co.* v. *Stevens,* 81 Conn. 16, 21, 69 A. 1052 [1908], we held it to be too comprehensive a word to receive a narrow construction." Id., 328–29; see also *Gentry* v. *Norwalk,* 196 Conn. 596, 612–13, 494 A.2d 1206 (1985); *Duguay* v. *Hopkins,* 191 Conn. 222, 229, 464 A.2d 45 (1983); *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 556, 235 A.2d 643 (1967). A broad construction of the word "any" as used in § C-552.2, however, would limit the right of property owners to petition the board of representatives and would be in contravention of the legislative intent and purpose of § C-552.2 to provide landowners a right to appeal to the board. It would require a petitioner to obtain signatures of 20 percent of the property owners included in all of the amendments or zone changes encompassed in one application. It must not be overlooked that in most jurisdictions "[t]he interest of property owners in the stability and continuity of zoning regulations is protected . . . by affording them not only an opportunity to appear at public hearings, but also to protest specific changes in a formal manner." 1 R. Anderson, American Law of Zoning (3d Ed.) § 4.34. As Fuller pointed out in his letter, "[t]he rights of a group of dissatisfied property owners to appeal their zone change to the Board of Representatives should not be determined by the extent to which owners of property in

other areas are satisfied by their own zone changes, particularly since these other zone changes may involve different zone classifications or may be located a considerable distance away. Stated another way, the ability to petition the Board of Representatives should not be determined by how many separate zone changes are combined into one application." Fuller continued: "It also could not have been the intent of the legislature to allow objectors to one zone change to be able to affect property owners in another distant area, by filing a protest petition including twenty percent of the land involved in both zone changes. If all of the amendments were considered together in determining the twenty percent requirement, the board of representatives could be burdened with reviewing zone changes in areas where both the Zoning Board and the property owners in the zone were completely satisfied with that zoning amendment. Such a result would also be contrary to the intent of the charter provision, which limits the right to file a protest petition to persons in the affected area or within five hundred feet of it. For these reasons, all of the amendments should not be combined in determining whether a particular petition is sufficient."

A narrower interpretation of the word "any," in the context of § C-552.2, would permit a landowner within a single zone change or amendment contained in one application to petition the board of representatives. Common sense is to be employed in the construction of a charter. *Cilley* v. *Lamphere,* supra, 12. A city charter also "must be construed, if possible, so as reasonably to promote its ultimate purpose." *Arminio* v. *Butler,* supra, 218. " 'The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is . . . reasonable.' *Maciejewski*

v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984); *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980)." *Texaco Refining & Marketing, Inc.* v. *Samowitz,* 213 Conn. 676, 682–83, 570 A.2d 170 (1990). A narrow interpretation of "any" in the phrase "in any proposed amendment" of § C-552.2 would not only effectuate the ultimate charter purpose giving the right to landowners to protest proposed zone changes but it is the only reasonable and rational construction of § C-552.2.

In addition, we agree with the plaintiffs that the use of the singular form of the word "amendment" shows an intent to refer to only one amendment or one single zone change. Although General Statutes § 1-1 (f) provides that "[w]ords importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular," we have held that because § 1-1 (f) uses the word "may" it is clearly directory and not mandatory. *Winchester* v. *State Board of Labor Relations,* 175 Conn. 349, 361, 402 A.2d 330 (1978). "[S]uch statutory expressions are legislative statements of a general principle of interpretation. . . . The principle does not require that singular and plural word forms have interchangeable effect, and discrete applications are favored except where the contrary intent or reasonable understanding is affirmatively indicated." 2A J. Sutherland, Statutory Construction (4th Ed.) § 47.34; *Winchester* v. *State Board of Labor Relations,* supra. There is no such contrary intent or reasonable understanding affirmatively indicated here. We therefore interpret the word "amendment" in its singular form as referring to one zone change or one amendment. It thus does not apply to all the zone changes within application No. 84-053. " 'It is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words.' *International Busi-*

*ness Machine Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 [1974]." *Winchester* v. *State Board of Labor Relations,* supra. Legislative intent is to be found not in what the legislature meant to say, but in the meaning of what it did say. *Commissioner* v. *Freedom of Information Commission,* 204 Conn. 609, 620, 529 A.2d 692 (1987).

Moreover, there is nothing in the charter that requires the board of representatives to vote on a zoning application that consists of several amendments or zone changes in the same manner that the zoning board had voted on it. The charter provides that "[t]he Board of Representatives shall *approve or reject such proposed amendment* . . . . The failure of the Board of Representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the Zoning Board's decision." (Emphasis added.) Stamford Charter § C-552.2. If we were to agree with the trial court that "[i]f the zoning board acts unitarily, the action of the board of representatives must likewise be unitary," the only possible argument for that interpretation would be to construe the word "amendment" in this part of § C-552.2 as referring to the entire application No. 84-053 as constituting one single amendment although it contained many different zone changes. If, however, we were to construe "amendment" in this part of the provision as referring to the entire application, as the trial court did, we would likewise have to apply the same interpretation to that part of the provision of § C-552.2 that sets out the land area to be used in determining the 20 percent requirement needed for a valid petition. For the reasons stated above, we refuse to construe the word "amendment" to apply to the entire application. " 'It is a familiar principle of statutory construction that where the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance.'

*State ex rel. Hyde* v. *Dowe,* 129 Conn. 266, 271, 28 A.2d 12 (1942)." *Steadwell* v. *Warden,* 186 Conn. 153, 164, 439 A.2d 1078 (1982) (*Shea, J.,* dissenting). The general rule is that a word or phrase should have the same meaning throughout the statute in the absence of a clear indication to the contrary. *In re Juvenile Appeal (85-AB),* 195 Conn. 303, 324, 488 A.2d 778 (1985) (*Parskey, J.,* dissenting); *Perez* v. *Pantasote, Inc.,* 95 N.J. 105, 116, 469 A.2d 22 (1984); *State* v. *Welch,* 135 Vt. 316, 321, 376 A.2d 351 (1977). The context of § C-552.2 discloses no contrary intent. Furthermore, we have stated that "[i]n approving or rejecting the action of the planning and zoning commission, the town council [here the board of representatives] acts as a zoning authority and exercises its own independent judgment and discretion . . . ." *Zenga* v. *Zebrowski,* 170 Conn. 55, 60, 364 A.2d 213 (1975). We have already noted that the board of representatives, in reviewing the action of the zoning board, is called upon to perform a legislative function. *Burke* v. *Board of Representatives,* supra, 39. We are not unmindful, however, that the charter provides that the board of representatives shall be guided by the same standards as those prescribed for the zoning board, but we have held that those "standards are typical legislative standards; viz., promotion of health and the general welfare, provision for adequate light and air, prevention of overcrowding, and avoidance of undue population concentration." Id., 40. There is nothing in the plain language of § C-552.2 that supports the trial court's conclusion that the board of representatives must vote on the application in the same manner that the zoning board had voted on it.

On the basis of the rules of statutory construction and the charter's purpose to provide affected landowners a right to appeal a proposed zone change to the board of representatives, we conclude that the trial court erred in finding that the charter did not permit

the board of representatives to vote on each separate zone change encompassed in application No. 84-053.

Although we are not bound by them, we note that other courts have addressed this issue and their decisions are instructive. There are two factually similar New York cases that are in accord with our interpretation. In *431 Fifth Avenue Corporation* v. *New York,* supra, 245, the court construed a similar charter provision that authorizes protests " 'by the owners of twenty per centum or more of the area of the land included in such proposed change.' "[8] In that case, the city planning commission adopted an amendment to the

---

[8] Section 200 of the charter of the city of New York (1936) provided "Any existing resolution or regulation of the board of estimate to regulate and limit the height and bulk of buildings, to regulate and determine the area of yards, courts and other open spaces or to regulate and restrict the locations of trades and industries and the location of buildings designed for specific uses or creating districts for any such purpose, including any such regulation which provides that the board of standards and appeals may determine and vary the application of such resolutions or regulations in harmony with their general purpose and intent and in accordance with general or specific rules contained in such regulations, may be amended, repealed or added to only in the following manner: the commission may upon its own initiative at any time or upon application as provided in section two hundred one; adopt a resolution for any such purpose subject to the limitations provided by law. Before adopting any such resolution, the commission shall afford persons interested an opportunity to be heard at a time and place to be specified in a notice of hearing to be published in the City Record for the ten days of publication of the City Record immediately prior thereto. Any such resolution shall be filed with the secretary of the board of estimate within five days from the date of its adoption. Unless the board of estimate shall modify or disapprove such resolution by a three-fourths vote within thirty days from the date of filing, it shall thereupon take effect, except that in case a protest against a proposed resolution shall have theretofore been presented, duly signed and acknowledged by the owners of twenty per centum or more of the area of land included in such proposed change, or by the owners of twenty per centum or more of the area of land immediately adjacent extending one hundred feet therefrom, or by the owners of twenty per centum or more of the area of land directly opposite thereto extending one hundred feet from the street frontage of such opposite land, such resolution shall not be effective unless approved by the board of estimate by unanimous vote of the entire board."

building zone resolution that included in one omnibus zoning resolution numerous changes affecting some height and area districts throughout the city of New York. Because the changes affected the entire city, the court was asked to interpret the "area of land" included in the proposed changes. The plaintiff argued, as the parties do in the present case, that the court should not construe the charter to give the commission the power to make the right to any protest ineffective by combining numerous separate and distinct changes in one omnibus resolution. The plaintiff further argued that the amendment must be treated as if "separate changes made therein had been separately enacted." Id., 247. In agreeing with the plaintiff, the court held: "Although numerous changes affecting some Height and Area Districts are included in one omnibus resolution . . . these changes are indicated in separate sections, each affecting entirely different districts, and insofar as the right to protest is concerned, these separate sections should be considered as if they had been separately enacted. They have no more relation to each other than do the various provisions of the Building Zone Resolution which they amend." Id., 248.

In addition, in *208 East 30th Street Corporation* v. *North Salem,* supra, 287, the court held that 20 percent of owners within a single area can protest a zoning amendment that affected eight separate noncontiguous locations within the town of North Salem. In that case, North Salem amended its zoning ordinance to provide for multifamily residential housing. The amendment affected eight separate locations within the town and although they were distinct and noncontiguous, the parcels were rezoned pursuant to a single vote of the town board. The owners of about 35 percent of the total land affected by, adjacent to, or directly opposite one of the locations affected by the amendment filed protests against the rezoning. The

town board held that the 20 percent requirement in § 265 of the New York Town Law[9] was satisfied. Therefore, in order for the proposed amendment to become effective it had to receive a favorable vote of three-quarters of the members on the town board. The board's vote was, however, insufficient to enact the amendments.

In affirming the lower court's decision that the amendments were valid as to the other seven areas but invalid as to the single area voted on by the town board, the appellate court, referring to *431 Fifth Avenue Corporation* v. *New York,* supra, held that the zoning amendments adopted by the town board in a single vote and affecting eight discrete areas within the town "should be considered as if they had been separately enacted." *208 East 30th Street Corporation* v. *North Salem,* supra, 287. That court further noted that the boundaries of the various sections which were affected by the zoning amendments were not geographically contiguous and can be considered separately. "Where eight noncontiguous [sections] are affected by the amendments, special consideration is particularly appropriate for each site."[10] Id., 288.

---

[9] Section 265 of the New York Town Law provides in part: "Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed by ordinance. In case, however, of a protest against such change signed by the owners of twenty per centum or more, either of the area of the land included in such proposed change, or of that immediately adjacent extending one hundred feet therefrom, or of that directly opposite thereto, extending one hundred feet from the street frontage of such opposite land, such amendment shall not become effective except by the favorable vote of at least four members of the town board. The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments." N.Y. Town Law § 265 (McKinney 1965).

[10] In *Rusnak* v. *Woodbridge,* 69 N.J. Super. 309, 311, 174 A.2d 276 (1961), the plaintiffs filed protests against the adoption of a zoning amendment that would change the defendant's property to a highway business zone use. The amendment, voted on as a whole, made several substantial zone changes, including changes in the zoning use map, "all of which affected

In sum, we conclude that the language of § C-552.2, specifically, "any proposed amendment," permits the board of representatives to vote on each separate zone change within one application for which a valid protest petition has been filed. In so holding, we agree with the parties that Fuller's analysis of § C-552.2 presents the most reasonable and rational interpretation of that provision. Fuller states, "it is my opinion that each separate zone change or amendment (even though combined with other amendments in one application) may be referred from the Zoning Board to the Board of Representatives if a proper petition is filed. Each zoning amendment may cover more than one property and includes all contiguous properties for which the same changes were made, as shown on the various zoning maps which were part of the applications and decisions of the Zoning Board. A change of zone for an area from one zone into two different zones would be two separate zone changes. Also, if an area was previously divided into two different zones but is changed into one new zone, this would be two separate zoning amendments even though both areas are now contained in the same zone." "This rule of construction strikes a balance between the common good and public interest in zoning, and the legitimate private interest of property

---

many lots and lands throughout the township" in addition to the defendant's property. Id., 312. The plaintiffs, however, did not constitute 20 percent of the owners of the area of all of the lots or land affected by all of the zone changes or all of the lots and land throughout the township of Woodbridge that were rezoned to a highway business zone. The court was asked to determine the "quantum" of property to be included in computing the protest area. The court held that the entire district rezoned highway business, of which the defendant's property was a part, must be deemed the measure rather than individual blocks or lots within that district. Id., 315–16. In so holding, the court noted that although the defendant's property "does possess certain unique positional characteristics in relation to the surrounding area, the proofs, especially the township zoning map, unmistakably indicate a legislative intent to incorporate the premises within the larger area zoned highway business." Id., 316.

owners adversely affected by a proposed change. It is a practical rule applicable to varied sets of circumstances and one which prevents the right of protest provided for by the [charter] from becoming illusory merely by the enactment of a comprehensive amendment." *Rusnak* v. *Woodbridge*, 69 N.J. Super. 309, 315, 174 A.2d 276 (1961).[11]

It remains necessary to discuss a matter that will arise upon remand[12] that involves the trial court's denial of the motion of John Fiorito, who, along with other property owners, was successful in petitioning the board of representatives to return their properties to the preexisting zoning classification. It is useful, in discussing this matter, to set out certain additional circumstances.

Ridgeway's petition, which was petition 12, filed with the zoning board, opposed the zone change in the area of Bull's Head between Bedford and Summer Streets

---

[11] The plaintiffs Bull's Head and Fiorito contend that the trial court's reversal of the action of the board of representatives in toto adversely affected the property rights of nonparties thereby denying them constitutionally protected due process rights. Because we find that the trial court erred in reversing the board's action, we need not decide the constitutional due process rights of the nonparties.

In addition, they claim that the trial court lacked subject matter jurisdiction to reverse, in toto, the actions of the board of representatives and to remand to the board because none of the successful board of representative petitioners was named, served or cited as parties by the court. This issue was addressed in *Fong* v. *Planning & Zoning Board of Appeals*, 212 Conn. 628, 637, 563 A.2d 293 (1989), where we held that failure to name and serve necessary and indispensable parties does not deprive the court of subject matter jurisdiction where such parties are not statutorily mandated to be made parties to an appeal. We repeat what we said in *Fong*: "Only when the statute authorizing the appeal requires a designated person to be made a party does the failure to do so constitute noncompliance with its terms and thus involve subject matter jurisdiction." Id.

[12] It is evident that, in addition to Fiorito, all of the other successful property owners who signed petitions 13 and 14 are also necessary and indispensable parties to Ridgeway's appeal because of the "gerrymandering" issue.

to Sixth Street, which included the Ridgeway Shopping Center, and the area south of the shopping center on the east side of Summer Street between Sixth and Second Streets. Ridgeway's petition, which Fiorito had also signed as a property owner, included the area previosly zoned C-L (limited business district) but which, as part of application No. 84-053, was rezoned C-B (community business district). In addition to Ridgeway's petition, Fiorito, and several other property owners, also filed petitions 13 and 14 opposing the zone change in the area of the east side of Summer Street between Sixth and Second Streets. Thus, petitions 13 and 14 included a portion of the area encompassed by petition 12. Ridgeway's petition 12 was initially consolidated with petitions 13 and 14 for the purpose of determining whether they were valid, i.e., satisfied the 20 percent requirement.

Prior to voting on the petitions, the board severed petition 12 from petitions 13 and 14. In so doing, the board crossed out on petition 12 the area of the east side of Summer Street between Sixth Street and Second Street encompassed by petitions 13 and 14. As a result, what was left on petition 12 to be voted on by the board was the area of Bull's Head between Bedford and Summer Streets to Sixth Street. Petitions 13 and 14 covered the area south of Sixth to Second Streets. The board of representatives upheld the proposed zone change challenged in petition 12 and overturned the proposed zone change in the area covered in petitons 13 and 14 and returned those areas back to a C-L zone. Thus, Fiorito and the other property owners who had brought petitions 13 and 14 to the board of representatives had successfully challenged the zoning board's proposed change for the area referred to in their petitions.

In Ridgeway's appeal to the Superior Court, it alleged, inter alia, that the board acted arbitrarily, ille-

gally and abused its discretion by severing Ridgeway's petition 12 from petitions 13 and 14. This was what Ridgeway characterized as its "gerrymandering" issue. On the basis of this claim, Fiorito then moved to be named a party defendant in Ridgeway's appeal on November 12, 1987. The court held a hearing on November 24, 1987, and denied Fiorito's motion to be made a party defendant. In its oral decision, the court stated that Fiorito was not a necessary and indispensable party to the appeal and it was too late in the proceedings to make him a party defendant.

Fiorito contends that he was a necessary and indispensable party to that part of Ridgeway's appeal, claiming that the board, by gerrymandering, severed the area south of Sixth to Second Streets in his petition for voting purposes. The board of representatives contends that the court did not err in denying Fiorito's motion because he was not a party of record in the challenged administrative proceeding and the relief requested by Ridgeway in its appeal would not have "necessarily" affected Fiorito's rights. The board makes this assertion despite the fact that Fiorito had also signed Ridgeway's petition 12. We conclude that the trial court erred in denying Fiorito's motion to be made a party defendant because Fiorito as a necessary and indispensable party to Ridgeway's appeal was entitled to notice and an opportunity to be heard.

It has been well established that parties are indispensable if they " ' "not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields* v. *Barrow,* 58 U.S. (17 How.) 130, 139 [15 L. Ed. 158 (1855)]; 3A Moore, Federal Practice § 19.07.' *Standard Mattress Co.* v. *Hartford,* 31 Conn. Sup. 279, 288, 329 A.2d 613

(1974)." *Sturman* v. *Socha,* 191 Conn. 1, 6, 463 A.2d 527 (1983). In addition, we have held that " '[a]n applicant who received a favorable decision from the zoning board of appeals is a necessary, indeed indispensable, party to an appeal by persons aggrieved by the decision because were the appeal to be sustained the result would be the invalidation and deprivation of rights granted to the applicant by the zoning board. *Kuehne* v. *Town Council,* 136 Conn. 452, 462, 72 A.2d 474 [1950]; *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 218, 220, 43 A.2d 304 [1945].' *Tazza* v. *Planning & Zoning Commission,* 164 Conn. 187, 190–91, 319 A.2d 393 (1972); see also *Shulman* v. *Zoning Board of Appeals,* 143 Conn. 182, 183, 120 A.2d 550 (1956)." *Fong* v. *Planning & Zoning Board of Appeals,* 212 Conn. 628, 633, 563 A.2d 293 (1989). In *Devaney* v. *Board of Zoning Appeals,* supra, certain property owners appealed a decision of the board of zoning appeals permitting Vito Migliaro to use, for a restaurant, the lower floor of a building in a residence B district. The court sustained the plaintiffs' appeal and Migliaro filed an appeal from that judgment to this court. In that case, we held, inter alia, that "[i]n the interest of proper practice, we add that, as relief granted to the plaintiffs on the appeal would necessarily result in the invalidation of the permission granted to Migliaro to use the premises for a restaurant, he is a necessary, indeed an indispensable party to it." Id., 220. We conclude that this same reasoning is applicable to Fiorito, as a successful petitioner before the board of representatives.

Although Fiorito is a petitioner who has received a favorable decision from the board, he is not an indispensable and necessary party unless Ridgeway prevails in its "gerrymandering" issue and, as a result, there would be an invalidation and deprivation of the rights granted to Fiorito by the board. *Tazza* v. *Planning & Zoning Commisssion,* supra, 190–91. If the board had

not severed petition 12 from petitions 13 and 14, there might have been a different result in Ridgeway's petition to the board of representatives. If the court were to sustain Ridgeway's appeal on the "gerrymandering" issue and rule that the board's action was illegal, arbitrary or in abuse of its discretion, it would invalidate the board's vote as to Ridgeway's petition 12 which would also affect the board's vote on petitions 13 and 14. Thus, the court's decision would affect those property owners who signed petitions 13 and 14 and who were successful before the board in having their area returned to a C-L zone. Fiorito, as one of those successful property owners, would thereby be deprived of the right to use his property in the manner prescribed in the zoning regulations accorded to areas zoned C-L.

Furthermore, this case is similar to *Fong* v. *Planning & Zoning Board of Appeals,* supra, 633–34, where we recently held that a person who initiates a proceeding before the zoning board is a necessary and indispensable party to an appeal of that decision. In that case, the building inspector issued the plaintiffs Fong a building permit to add a second story to their commercial building. Shortly after construction began, Charles W. Pettengill, Jr., owner of property immediately adjacent to the plaintiffs' property, appealed the granting of the building permit to the planning and zoning board of appeals. The board sustained Pettengill's appeal and revoked the plaintiffs' building permit. The plaintiffs appealed the board's decision to the Superior Court and on January 28, 1987, the court sustained the plaintiffs' appeal. On February 11, 1987, Pettengill moved to intervene and set aside the judgment. The court denied Pettengill's motions.

In affirming the Appellate Court's decision holding that Pettengill was a necessary and indispensable party, we held that because Pettengill initiated the very proceeding that resulted in the appeal, he had become a

party to the administrative proceeding. "If he had not prevailed before the board, he could have appealed from its decision. Having been successful, Pettengill acquired a special interest in the subject matter of *any appeal resulting from the proceeding that might deprive him of the benefit of its outcome before the board in its favor* . . . . It was essential that he be given notice and an opportunity to protect his interests by making him a party to the appeal." (Emphasis added.) Id., 633–34.

In the present case, Fiorito and the other property owners who signed petitions 13 and 14, like Pettengill, by analogy, initiated the proceeding before the board of representatives by signing the petitions in opposition to the proposed zoning amendments. In *Fong,* we distinguished Pettengill's interest from the interests of abutting landowners and the public for the reason that he was the person who initiated the proceedings that resulted in the appeal. Id., 633. Fiorito's interest is similarly distinguishable from the public interest because Fiorito and the other property owners who signed the successful petitions 13 and 14 initiated the proceedings which resulted in Ridgeway's appeal on the "gerrymandering" issue. The board of representatives remains, however, the proper party to represent the public interest. See *Tazza* v. *Planning & Zoning Committee,* supra, 192. In addition, if Fiorito had not prevailed before the board of representatives, he could have appealed to the Superior Court from that board's decision. Moreover, as previously stated, Fiorito, having been successful before the board, acquired a special interest in the subject matter of Ridgeway's appeal and if the trial court were to sustain the appeal, Fiorito would be deprived of that special interest. Therefore, we conclude that the trial court erred in denying Fiorito's motion to be made a party defendant. Fiorito is a necessary and indispensable

party to Ridgeway's appeal and should have been given notice and an opportunity to be heard.

There is error, the judgments are set aside and the cases are remanded to the trial court for further proceedings not inconsistent with this opinion.

In this opinion GLASS, COVELLO and HULL, Js., concurred.

SHEA, J., dissenting. I agree with the majority that the zoning board of Stamford cannot, by including several zone changes affecting separate areas of the city in a single proposed zoning amendment, defeat the right of 20 percent or more of the property owners within the area encompassed by a particular zone change, or within 500 feet thereof, to petition the board of representatives for relief pursuant to § C-552.2 of the charter. I disagree, however, that the board of representatives, in acting on those petitions, was intended to have an item veto of a zone change that the zoning board has voted upon as a single package, as in this case when it approved the Downtown/Bull's Head application.

"The manifest legislative intent expressed in the Stamford charter is that the board of representatives, in considering an amendment to the zoning map, shall review the legislative action of the zoning board on that board's written findings, recommendations and reasons. The question before the board of representatives is whether to approve or to reject the amendment." *Burke* v. *Board of Representatives,* 148 Conn. 33, 39, 166 A.2d 849 (1961). In voting separately upon the individual components of the Downtown/Bull's Head zoning amendment, approving some and modifying or rejecting others, the board of representatives has disregarded its obligation to approve or reject this amend-

444

ment, which the zoning board had "proposed" as a unitary comprehensive zoning plan for the entire area.

The provision of the charter allowing the board of representatives to veto the legislative action of the zoning board in approving a zoning amendment, after a petition by affected property owners has been filed, should not be distorted into an authorization to institute zone changes that have never been proposed by the zoning board. The evident purpose of this provision is to require, when a petition is filed, that every zoning amendment receive the approval of two legislative bodies, just as every enactment of our legislature must be voted upon by both house and senate chambers in identical form. Since the zoning board voted upon the Downtown/Bull's Head application only as a unitary proposal, its action does not imply approval of the changes in zone resulting from the modification of its proposal that occurred when the board of representatives selectively vetoed parts of it. The zone changes approved by the board of representatives are solely its own creation, contrary to the intent of the charter. I agree with the trial court that "the Stamford scheme does not put in the board of representatives the power to usurp the authority of the zoning board by fragmenting the zoning board's decisions."

Accordingly, I dissent.